**Edward J. WEST**

v.

**The WILLIAMSPORT AREA COMMUNITY COLLEGE by its Board of Trustees et al.**

**Civ. No. 77–1023.**

United States District Court, M. D. Pennsylvania.

Feb. 11, 1980.

Walter W. Wilt, Charles E. Schmidt, Jr., Harrisburg, Pa., for plaintiff.

Wayne M. Richardson, Millersville, Pa., O. Wm. Vanderlin, Williamsport, Pa., Patricia A. Donovan, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

■ The above-captioned action, filed on November 10, 1977, asserts separate federal causes of action under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the Fourteenth Amendment, and a pendent state law claim for breach of contract.[1] Plaintiff, a former professor at the Williamsport Area Community College (WACC), contends that he was unconstitutionally denied a pre-termination hearing and that his discharge violated his employment contract. Defendants, WACC, past and present members of WACC's Board of Trustees, and several past and present administrative officials of the College,[2] have moved for dismissal[3] of all or part of plaintiff's amended complaint on four grounds: (1) plaintiff's federal claims are barred by the applicable statute of limitations; (2) those defendants who were not associated with WACC at the time plaintiff was discharged cannot be held individually liable on plaintiff's damage claims; (3) plaintiff has failed to allege a cause of action under 42 U.S.C. § 1985(3); and (4) defendant WACC is not subject to suit under the Civil Rights statutes pursuant to which plaintiff proposes to proceed.[4]

■ Each of the grounds asserted by defendants is amenable to summary adjudication. Resolution of individual questions does not turn upon particular findings of fact and it is not essential to examine information *dehors* the pleadings. Full consideration of each ground, however, is unnecessary. The statute of limitations defense, the one totally dispositive issue defendants have raised, is meritorious.[5] Accordingly, the federal claims will be dismissed as time-barred and I will decline to exercise pendent jurisdiction over plaintiff's state law claim.[6]

## I.

■ On February 9, 1973, plaintiff accepted reappointment to the WACC staff for the 1973–74 academic year as an allegedly tenured associate professor in the School of Applied Arts and Sciences. On May 29, 1973, plaintiff was notified that his employment with the college was being terminated effective August 31, 1973. The letter from the Office of the President of the College advised plaintiff that he was being retrenched because of declining enrollments. On July 3, 1973, plaintiff requested the College Board of Trustees to "reconsider" his termination.[7] No action

---

1. Jurisdiction is based on 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), (4), and the doctrine of pendent jurisdiction.

2. Plaintiff had also named the Secretary of Education for the Commonwealth of Pennsylvania as one of the defendants. By orders dated March 16, 1978 and September 19, 1978, the Education Secretary was dismissed from this action.

3. Since defendants have answered plaintiff's amended complaint their motion to dismiss is more properly considered as a motion for judgment on the pleadings. Fed.R.Civ.P. 12(c).

4. Defendants have also moved for summary judgment on the merits of plaintiff's procedural due process claim. By agreement of the parties, plaintiff has not responded to the summary judgment motion and the matters raised in that motion are not before the court at this time.

5. In reviewing defendants' motion to dismiss I have accepted as true all *well-pleaded* allegations of fact and have construed the complaint liberally in the light most favorable to the plaintiff.

6. The assumption of pendent jurisdiction is not a matter or right but is committed to the court's sound discretion and where, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense," the court may properly refuse to exercise jurisdiction over the state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *Accord, Broderick v. Associated Hospital Service of Philadelphia*, 536 F.2d 1, 8 n.25 (3rd Cir. 1976).

7. Plaintiff alleges in his amended complaint that his July 3rd letter, appended to the amended complaint as Exhibit "C", formally requested a hearing on the termination of his employ-

was taken on this request and plaintiff was discharged from the College on August 31, 1973.

This action was instituted more than four years later. Plaintiff contends that defendants denied him due process by terminating his position with the College without *prior notification* and without an opportunity for a hearing.[8] As relief for this purported denial of due process plaintiff seeks reinstatement to his former position with back pay, reinstatement of pension benefits, punitive damages, a declaratory judgment, and reasonable attorney's fees.

ment. I have carefully scrutinized this letter and have found nothing in it to suggest that a hearing had been requested. I do not believe that the request for reconsideration can accurately be viewed as a *formal* petition for a hearing. It is of course entirely appropriate for a court to consider the attachments to a complaint to determine whether a mere allegation is an unwarranted deduction of fact, which need not be accepted as true. *See AMFAC Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 429–30 (9th Cir. 1978); 2A MOORE'S FEDERAL PRACTICE ¶ 12.08, at 2267–2268 (2nd ed. 1979). It should also be noted, however, that whether plaintiff actually requested a hearing is not material to the statute of limitations issue.

8. Significantly, plaintiff complains of his discharge without a *pre-termination* hearing. His claim seems to be directed at the absence of process *before* the decision to retrench had been made. He does not aver that there were no available procedures that he could have invoked between the time that he had been notified of his discharge and the effective date of discharge. Indeed, his letter of July 3, 1973 suggests that plaintiff was aware of some grievance procedure available to him at that time. It must also be noted that plaintiff does not allege that the Board of Trustees was contractually obligated to afford him a hearing; that he made any specific request for a hearing which may have been available under his employment contract; or that his contract required a hearing before the termination decision had been made. Instead, it appears that plaintiff is basing his due process claims on his alleged status as a *tenured* college professor and the property interest created by that status. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *See* plaintiff's Brief, Doc. 47, at p. 13.

## II.

Because Congress has not prescribed a limitation period for actions under the Civil Rights statutes, federal courts apply the state statute of limitations that would be applicable "had an action seeking similar relief been brought under state law." *Polite v. Diehl,* 507 F.2d 119, 122 (3rd Cir. 1974) (*en banc*). Defendants content that the procedural due process claim falls squarely within the Pennsylvania two-year personal injury statute of limitations.[9] Plaintiff, on the other hand, argues that the general six-year statute of limitations [10] governs the instant action.[11]

9. Act of June 24, 1895, P.L. 236 § 2, Pa.Stat. Ann. tit. 12, § 34 (1953) (Purdon). Section 34 provides:

Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law.

10. Act of March 27, 1713, Pa.Stat.Ann. tit. 12, § 31 (1953) (Purdon). Section 31 provides in pertinent part:

All actions of trespass quare clausum fregit, all actions of detinue, trover and replevin, for taking away goods and cattle, all actions upon account and upon the case (other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants), all actions of debt grounded upon any lending, or contract without specialty, all actions of debt, for arrearages of rent, except the proprietaries' quit-rents, and all actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them, which shall be sued or brought at any time after the five and twentieth day of April, which shall be in the year of our Lord 1713, shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions upon the case, other than for slander, and the said actions for account, and the said actions for trespass, debt, detinue and replevin, for goods or cattle, and the said actions of trespass quare clausum fregit within three years after the said five and twentieth day of April next, or within six years next after the cause of such actions or suit, and not after.

11. Pennsylvania has recently revised its statutes of limitations through the re-enactment of

In arguing that the six-year limitations period applies, plaintiff cites as dispositive *Meyers v. Pennypack Woods Homeownership Association,* 559 F.2d 894 (3rd Cir. 1977), and *Davis v. United States Steel Supply,* 581 F.2d 335, 337 (3rd Cir. 1978). Those cases, however, are factually inapposite and do not control the limitations defense raised here. In *Meyers,* the court held that the six-year limitations period applied to an action under 42 U.S.C. §§ 1981 and 1982 charging racial discrimination in housing because the federal cause of action was analogous to the common law tort of wrongful interference with another's economic rights or interests, to which the Pennsylvania courts have applied Pa.Stat. Ann. tit. 12, § 31. In *Davis,* the court,

declaring that a claim under 42 U.S.C. § 1981 for racial discrimination in employment practices resembled state law causes of action for violation of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 953, 955 (Supp.1980) (Purdon), or breach of an at-will employment contract, also applied the six-year statute of limitations.[12] In neither case did the court purport to rule that the six-year limitations period applies to all civil rights actions. Indeed, in each action the court specifically restricted its ruling to the facts before it and emphasized that other federal claims may be governed by different limitation periods. *Meyers,* 559 F.2d at 903, n.27;[13] *Davis,* 581 F.2d at 341 n.8.[14]

the Judicial Code. *See* Act of July 9, 1976, P.L. 586, Act No. 142, § 2, 42 Pa.Stat.Ann. §§ 5501–5574. The new codification, which went into effect on June 27, 1978, has no effect on this action, which was already pending on the effective date of the repeal. *See* Act of July 9, 1976, P.L. 586, Act No. 142, § 25(a). *See generally Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 477 n.2 (3rd Cir. 1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

**12.** *Davis* does not stand for the proposition that the six-year limitations period applies to all actions involving an employment contract. While the Court of Appeals subsequently applied section 31 to an action alleging a wrongful termination of employment, *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d at 476–77 (non-renewal of employment contract on grounds allegedly violating plaintiff's First Amendment rights), it did so only after determining that a claim alleging that the employment relationship had been destroyed for impermissible reasons resembled the common law tort of wrongful interference with another's economic rights or interests. The court did not lay down a blanket rule covering all civil rights employment cases. Moreover, it should be noted that the instant case differs materially from *Skehan,* which also involved the dismissal of a college professor. In *Skehan,* the plaintiff specifically invoked procedures available to him under his employment contract. His request to process the matter through the contractual grievance machinery was made on September 21, 1970 and concerned the decision of the Bloomsburg State College not to renew his contract after the 1970–71 school year. The President of the College did not respond to his request to invoke administrative processes. Subsequently, on October 17, 1970, the plaintiff was dismissed

from the College for misconduct. It was only after he had been discharged that it became apparent that the contractual grievance machinery on the question of non-renewal would not be implemented. On October 10, 1972, less than two years after he had been discharged, plaintiff filed suit in federal court, alleging *both* a substantive violation of his First Amendment rights *and* a denial of due process. Thus, his action had been filed less than two years after his due process claim had accrued and, therefore, it would not be barred by Pa.Stat. Ann. tit. 12, § 34. Furthermore, his due process claim was predicated on a breach of contract theory and arguably the six-year limitation period would be applicable. At any rate, it is clear that the action was not barred under either limitation period. Indeed, it does not appear that the timeliness of the due process issue had ever been questioned. The instant action, however, was filed more than four years after the effective date of plaintiff's discharge. Plaintiff does not allege that he unsuccessfully attempted to invoke contractually established review procedures; plaintiff does not contend that his employment contract entitled him to a hearing before the decision to retrench had been made; and plaintiff does not allege that his discharge violated some fundamental constitutional right, such as freedom of speech or equal protection. Thus, I cannot conclude that this matter is controlled by *Skehan.*

**13.** We do not hold that all actions in the federal courts of Pennsylvania under §§ 1981 and 1982 are governed by the six-year limitation of section 31. As previously discussed, each action and even individual aspects of the same action may be treated differently for statute of limitation purposes. *We now decide only that sec-*

**14.** See note 14 on p. 96.

■ Although not dispositive of the statute of limitations defense, *Meyers* and *Davis* do establish the method by which the courts of this circuit are to determine which of the several state statutes of limitations should be applied to a federal cause of action under the Civil Rights statutes.[15] A two-pronged inquiry is to be pursued. First, the essential nature of the federal claim must be characterized. For example, does the federal cause of action sound in tort or in contract? And second, the specific state cause of action most similar to the acts alleged in the complaint must be identified. *Meyers*, 559 F.2d at 900–01; *Davis*, 581 F.2d at 338–39. That is, if the action sounds in tort, does it most nearly resemble wrongful interference with economic interests or intentional infliction of mental distress?

■ Resolution of the first of the two inquiries, the characterization of plaintiff's federal claim, is aided by reference to the Supreme Court's extended procedural due process discussion found in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), which raised the issue of whether damages should be presumed from a failure to provide students with a hearing prior to their suspension from school. The Court, after noting that 42 U.S.C. § 1983 "was intended to 'create a *species* of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the constitution," *id.* at 253, 98 S.Ct. at 1047 (emphasis added), rejected the argument that damages should be presumed and held that "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law." *Id.* at 259, 98 S.Ct. at 1050. The Court concluded that, since procedural due process, a highly elastic constitutional right, seeks to minimize *wrongful* deprivations of protected interests,[16] and "to convey to the individual a feeling that the government has dealt with him fairly," *id.* at 262, 98 S.Ct. at 1051, mental and emotional distress caused by the denial of procedural due process would be compensable under 42 U.S.C. § 1983.

■ It is evident from a reading of *Carey* that a procedural due process action sounds in tort. *See Burt v. Abel*, 585 F.2d 613, 616 (4th Cir. 1978). Contract damages are not awardable simply because a person has been denied an opportunity for a hearing. Before such damages may be awarded, the deprivation of a protected interest must be unjustified, *i.e.*, substantively unsupportable. But a denial of procedural due process by itself, even though the deprivation of the protected interest is justified, will sustain a damage action for mental and emotional distress, injuries compensable under the law of torts but not the law of contracts. *See* Restatement (Second) of Torts § 47, Comment b (1965); Restatement (Second) of Torts § 903 (1979).[17]

---

tion 31 applies to actions under §§ 1981 and 1982 alleging a wrongful refusal to sell or rent housing.

14. We reiterate that, for statute of limitations purposes, each complaint and different aspects of the same complaint may be treated differently. *We hold only that 12 P.S. § 31 applies to actions where the gist of a § 1981 complaint concerns racially discriminatory discharge of an employee under the facts in this record.*

15. These rules also apply to plaintiff's direct cause of action under the Fourteenth Amendment.

16. The heart of a procedural due process case is not whether the deprivation of the protected interest was justified. That question is more properly considered on a breach of contract claim or a claim involving a substantive right. Rather, the focus of the procedural due process case is whether the affected interest qualifies for protection under the due process clause and, if it does, whether constitutionally prescribed procedures had been utilized.

17. It bears reiterating that plaintiff in the instant action does not complain that he was discharged because of his race, age, sex or for any other constitutionally impermissible reason, or that his due process claim is predicated on a breach of contract.

Having determined that an action alleging a denial of due process is in essence a tort action, it is now necessary to ascertain the most appropriate state common-law tort analogue to a procedural due process claim. In *Meyers,* the Court of Appeals for the Third Circuit, in ruling that a claim of racial discrimination in housing most nearly resembled an action for wrongful interference with economic relations rather than the tort of intentional infliction of mental distress, assessed the similarity of the common-law torts to Meyers' federal claim from three perspectives: "(1) the defendant's conduct, (2) the plaintiff's injury, and (3) the relief requested."[18] *Meyers,* 559 F.2d at 901.

Viewing the instant action from these three perspectives compels the conclusions that the appropriate common-law tort analogue here *is* intentional infliction of mental distress and, therefore, that the two-year limitations period applies.[19] Unlike *Meyers,*[20] defendants' conduct in the matter *sub judice* did not cause an unjustified termination of the employment contract. *See*

*Unified School District No. 480 v. Epperson,* 583 F.2d 1118, 1121 (10th Cir. 1978); *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569, 577–78 (7th Cir. 1975) *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Zimmerer v. Spencer,* 485 F.2d 176, 179 (5th Cir. 1973). If the retrenchment was unjustified, it is because some substantive right had been violated and not because the plaintiff was denied the opportunity for a pretermination hearing.[21] Second, again unlike *Meyers,* the complaint here directly concerns emotional or psychic injury that is primarily intangible rather than tangible. Finally, the relief properly awardable for denial of due process approximates that which is available for intentional infliction of mental distress. The denial itself gives rise to substantial non-punitive damages if plaintiff proves mental or emotional distress. While equitable relief is available, it is not as broad and as encompassing as that which is available where the claimant has been discriminatorily discharged or fired on grounds violating his First Amendment rights.[22] Since proof

18. While *Meyers* and *Davis* indicate that the court is to examine the relief requested, it would appear that the more proper inquiry would be directed at what type of relief *could* be granted were the claimant to prevail.

19. Pennsylvania recognizes a right to recover for emotional distress which has directly resulted from the tortfeasor's intentional or wanton misconduct. *See, e.g., Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970). It would appear that the courts of the Commonwealth would apply the two-year personal injury statute of limitations to an action for emotional distress. *See Brownley v. Gettysburg College,* 14 Adams L.J. 172 (1973). *Cf. Hull v. Curtis Publishing Co.,* 182 Pa.Super. 86, 125 A.2d 644 (1956).

20. The *Meyers'* court refused to analogize a racial discrimination in housing complaint to the tort of intentional infliction of mental distress for the following reasons:

Meyers' complaint may peripherally encompass the emotional or psychic injury which he may have suffered, but its averments are directed to a specific concrete injury. Meyers wants to buy a house in Pennypack Woods and Pennypack will not sell him one. Pennypack's conduct bears little resemblance . . . to an intentional infliction of mental distress. Meyers' injury is primarily tangible not intangible; and Meyers wants both the

house and damages for the deprivation he has endured.

*Meyers,* 559 F.2d at 901.

21. Indeed, it is entirely possible to have fullest procedural safeguards available and yet have an unjustified governmental taking. But simply because there has been an absence of due process does not transform the deprivation from justified to unjustified. *See Carey,* 435 U.S. at 247, 98 S.Ct. at 1050.

22. In *Meyers* and *Skehan,* the court considered a request for "broad equitable relief" as an important factor militating against employing the two-year statute of limitations because that statute applies by its terms only to actions for damages. The Court of Appeals, however, did not rule that a request for equitable relief mandates application of the six-year statute of limitations. Furthermore, it must be noted that a Pennsylvania court asked to grant equitable relief will generally adopt and apply *that statute of limitations which governs the analogous action at law. See, e.g., Ebbert v. Plymouth Oil Co.,* 348 Pa. 129, 134–35, 34 A.2d 493 (1943); *Philadelphia v. Louis Laboratories, Inc.,* 201 Pa.Super. 16, 19, 189 A.2d 891 (1963). *See generally* 13 P.L.E., *Equity* § 44 (1959). Thus, where the corresponding legal right is barred by the statute of limitations equitable relief will also be denied. *See, e.g., Philadelphia v. Pio-*

that a person has been deprived of a property interest without due process does not establish that his claim of entitlement is meritorious, see Perry v. Sindermann, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), but simply means that official action may not be taken until constitutionally required hearings have been afforded, equitable relief is ordinarily limited to having the dispute resolved through the necessary proceedings.[23] Such equitable relief does not seek to reinstate the contractual relationship but to further the twin aims undergirding procedural due process: minimizing wrongful deprivations and conveying a feeling of fairness. Thus, although the availability of broad equitable relief in Meyers and Skehan was an important consideration in declining to apply the two-year personal injury statute of limitations, that consideration is not alone controlling and, under the circumstances of this case, does not compel application of the six-year limitations period.[24] Accordingly, since this action was instituted more than two years after the cause of action accrued, the federal claims will be disposed of as time-barred and this action will be dismissed.[25]

### III.

 While the limitations question is dispositive of this action I will briefly treat the other matters raised in defendants' motion to dismiss. First, since plaintiff has not alleged some invidiously discriminatory class-based animus behind the alleged conspirator's conduct, plaintiff has failed to plead a cause of action under 42 U.S.C.

§ 1985(3). See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Second, plaintiff has not alleged with requisite specificity a conspiracy to deprive him of constitutional rights in violation of 42 U.S.C. § 1983. See Rotolo v. Borough of Charleroi, 532 F.2d 920, 922–23 (3rd Cir. 1976). Third, after considering the arguments advanced by the parties and reviewing the pertinent authorities, I conclude that Williamsport Area Community College is a "person" under 42 U.S.C. § 1983 and does not share the state's sovereign immunity. See Mt. Healthy School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Unified School District No. 480 v. Epperson, 583 F.2d at 1122; Hander v. San Jacinto Junior College, 519 F.2d 273, 277–80 (5th Cir. 1975). And fourth, while those defendants who did not personally participate in the alleged constitutional violation may not be held individually liable for monetary damages, they are nonetheless proper parties to this suit in their official capacities.

---

neer Custom Upholstery Co., 199 Pa.Super. 528, 530, 185 A.2d 641 (1962).

23. Thus, plaintiff is not entitled to reinstatement and back pay merely because he was denied an opportunity for a hearing. See Carey, 435 U.S. at 259, 98 S.Ct. at 1050; Unified School District No. 480 v. Epperson, 583 F.2d at 1121; Hostrop v. Board of Junior College District No. 515, 523 F.2d at 577–78. Compare Zimmerer v. Spencer, 485 F.2d at 179.

24. Indeed, since the "corresponding legal right" is the tort of intentional infliction of mental distress, to which the two-year limitation period applies, it would appear that Pennsylvania

courts would deny equitable relief under the circumstances of this case. See note 20 supra.

25. Applying the shorter limitations period to a procedural due process case also seems sound inasmuch as relief would require the defendants to employ necessary due process safeguards under the conditions and circumstances that prevailed at the time the initial deprivation occurred. See Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d at 493–94. In brief, the claimant should be compelled to promptly assert a claim that may require a hearing to be held as the appropriate injunctive relief.