John MAZUR, Plaintiff,

v.

DEPARTMENT OF REVENUE, COMMONWEALTH OF PENNSYLVANIA; Commonwealth of Pennsylvania and Milton Lopus, Defendants.

Civ. A. No. 81–0008.

United States District Court,
M. D. Pennsylvania.

June 30, 1981.

Frank E. Garrigan, Shamokin, Pa., for plaintiff.

Mary Kay Kisthardt, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

In the complaint of the captioned matter, which was filed on January 5, 1981, plaintiff alleges he was improperly discharged from his employment and that the defamatory statements allegedly made by the defendants resulted in the imposition of a stigma that has seriously damaged his ability to take advantage of other employment opportunities. On February 23, 1981, defendants filed a motion to dismiss, which was supported by a brief filed on March 4, 1981. After requesting and receiving an extension of time in which to file a response, plaintiff filed his response brief on April 28, 1981, followed by defendants' reply brief filed on May 11, 1981. The motion to dismiss is ripe for disposition.

Defendants allege, as the basis for their motion to dismiss, the following:

1. The court lacks subject matter jurisdiction:

    a. The Eleventh Amendment bars this action against the Commonwealth and its Department of Revenue;

    b. The Eleventh Amendment bars this action against Milton Lopus, a Commonwealth official sued in this official capacity since any such recovery must be satisfied out of the state treasury;

2. This action must be dismissed since plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983: plaintiff did not have a property interest in his continued employment with the Department of Revenue; plaintiff has failed to allege the existence of a protected liberty interest; assuming that plaintiff had a property or liberty interest he was not deprived of it without due process.

3. Plaintiff's claims are barred by the statute of limitations.

After considering the arguments of both parties as well as the applicable case law, the court is of the opinion the motion to dismiss should be granted for the reasons set forth below.

Defendants assert as their first line of defense that the court lacks subject matter jurisdiction of plaintiff's claims because of the immunity provided by the Eleventh Amendment. In order to properly address this issue, the defendants must be divided into two groups: (1) Department of Revenue, Commonwealth of Pennsylvania; and Milton Lopus in his official capacity, and (2) Milton Lopus, as an individual.[1]

Contrary to defendants' position, the immunity afforded to states, and indirectly to individuals sued in their official capacities, does not preclude all forms of relief. It is uncontestable that prospective equitable relief may be had by an individual from the state under a § 1983 action. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh,* 438

---

1. It is not clear from the complaint whether defendant Lopus is being sued as an individual or in his official capacity, although service of the complaint would indicate the former. For purposes of discussion the court will assume he is being sued both as an individual and in his official capacity, which is in a light most favorable to plaintiff. *Savage v. Commonwealth of Pennsylvania,* 475 F.Supp. 524, 532 (E.D.Pa. 1979).

U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Spicer v. Hilton,* 618 F.2d 232 (3d Cir. 1980); *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470 (3d Cir. 1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). It is not clear, however, whether plaintiff's request for reinstatement *with seniority* constitutes prospective equitable relief as envisioned by the Court. Because of this court's findings on defendants' other arguments, however, this question need not be resolved. Suffice it to say that it is not certain plaintiff's entire claim against defendants Department of Revenue, Commonwealth of Pennsylvania, and Milton Lopus in his official capacity would be precluded by the Eleventh Amendment bar.

■ With regard to plaintiff's claims against Milton Lopus as an individual, it is clear there is no Eleventh Amendment bar and the motion to dismiss could not be granted on that basis.

Defendants' second basis for the motion to dismiss is that plaintiff has failed to state a claim upon which relief can be granted. Defendants contend that plaintiff did not have a "property" or "liberty" interest which was protected by the due process clause of the Fourteenth Amendment. Furthermore, assuming one did exist, defendants contend plaintiff received all the process that was required.

As defendants properly point out, the gravamen of a claim under the due process clause is a protected "property" or "liberty" interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court in *Roth* stated that while " '[L]iberty' and 'property' are broad and majestic terms.", the range of interests protected thereunder, however, is not infinite. *Id.* at 571, 92 S.Ct. at 2705.

Defendants argue, and plaintiff does not deny, that plaintiff did not have a "property" interest in his continued employment with the Commonwealth of the type that would invoke the protection of the due process clause.[2] *See Roth, supra; DeTore v. Jersey City Public Employees Union,* 615 F.2d 980 (3d Cir. 1980); *Skrocki v. Caltabiano,* 505 F.Supp. 916 (E.D.Pa.1981). What remains of plaintiff's due process claim, then, is his assertion that defendants' actions infringed upon a protected "liberty" interest.

In paragraph 13 of his complaint, plaintiff states

13.  Plaintiff, as a result of the actions of the Commonwealth of Pennsylvania, was subject to public ridicule, scorn, loss of prestige, emotional distress and loss of *liberty* in that his dismissal imposed a stigma that seriously damaged plaintiff's ability to take advantage of other employment opportunities.

Defendants concede that in specific instances, "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him," the due process clause requires notice and a fair hearing. *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). Defendants contend, however, that any defamation that may have occurred was not related to plaintiff's termination of employment and that even if they were related, plaintiff received all the process to which he was entitled.

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court reevaluated the confines of the "liberty" interests protected by the Fourteenth Amendment. In *Davis,* defendants circulated a flyer encaptioned "Active Shoplifters," which contained the name of and a photograph of the plaintiff. While plaintiff had been arrested for shoplifting, the charges were subsequently dismissed *prior*

---

2.  While plaintiff does not discuss "property" interests protected by the due process clause as such, he does refer to sections 101.31 and 101.61(a) of Title 4 of the Pennsylvania Code. As pointed out by defendants, however, plaintiff does not allege that he is an employee protected by the Civil Service Act, which is a pre-requisite to the application of the cited sections of the Pennsylvania Code.

to the publication and distribution of the flyer. Plaintiff alleged that the "active shoplifter" designation would inhibit his frequenting business establishments and "seriously impair his future employment opportunities." *Id.* at 697, 96 S.Ct. at 1158.

The Court found that the due process clause of the Fourteenth Amendment and § 1983 do not make actionable wrongs inflicted by government that had previously been thought to create only state law tort claims. In arriving at that conclusion, the Court reasoned as follows:

> Respondent, however, has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded. Rather, he apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have noted the "constitutional shoals" that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law, *Griffin v. Breckenridge*, 403 U.S. 88, 101–102 [, 91 S.Ct. 1790, 1797–1798, 29 L.Ed.2d 338] (1971); *a fortiori*, the procedural guarantees of the Due Process Clause cannot be the source for such law. *Id.* at 700–701, 96 S.Ct. at 1160.

The Court also found that

> the infliction by state officials of a "stigma" to one's reputation is somehow different in kind from infliction by a state official of harm to other interests protected by state law—is equally untenable. The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. *Id.* at 701, 96 S.Ct. at 1160.

Distinguishing the factual setting in *Davis* from those cases wherein a protected interest was found, the Court opined

In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law. *Id.* at 711–712, 96 S.Ct. at 1165.

In conclusion, the Court found

> Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause. *Id.* at 712, 96 S.Ct. at 1166. (Emphasis added)

In the case *sub judice*, plaintiff alleges that the agreement between him and defendant Lopus in some manner created an interest in employment that was subject to due process protection, when in fact it is clear that no "property" interest arises from such public employment situations. While it cannot be said that the alleged defamation and the termination of employment were not related, plaintiff still has not asserted "any right vouchsafed to him by the State and thereby protected." *Id.* Surely plaintiff does not contend that a public employment setting, which does not establish a "property" interest protected by the due process clause, when coupled with an alleged defamation, which cannot create a protected "liberty" interest in and of itself, can combine to spawn a protected "liberty" interest where none existed before. Such reasoning would dictate the finding that the due process clause "creates" a cause of action; a theory that has been consistently rejected by the Supreme Court. *Davis, supra; Roth, supra.* Accordingly, the court finds no protected "liberty" interest was infringed by defendants in this case.

Since plaintiff has failed to allege either a viable protected "property" or "liberty" interest, he has failed to state a cause of action based upon the due process clause and his complaint should be dismissed.

Assuming, *arguendo*, that plaintiff did allege the infringement of a protected "property" or "liberty" interest and that he did not receive the process he was due, plaintiff's complaint must be dismissed for another reason—failure to file the claim within the appropriate period of time. Defendants contend that plaintiff's cause of action is such that a two year statute of limitations should be applied, and since plaintiff has not filed within two years of his termination, the action is time barred. Plaintiff counters, arguing that either the four year statute of limitations, provided for in 42 Pa.C.S.A. § 5525(3), or the six year statute of limitations, provided for in 42

Pa.C.S.A. § 5527(6) should apply. For the reasons set forth below, the court holds that the two year statute of limitations applies in this case.

Since § 1983 contains no statute of limitations of its own, the courts must apply the analogous state statute of limitations. *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Swietlowich v. County of Bucks,* 610 F.2d 1157 (3d Cir. 1979).

In *West v. Williamsport Area Community College,* 492 F.Supp. 90 (M.D.Pa.1980), the court was also faced with a situation where plaintiff alleged his employment was wrongfully terminated and he sought, *inter alia,* back pay, reinstatement of pension benefits and punitive damages. The court in *West,* following the procedure established in *Meyers v. Pennypack Woods Homeownership Association,* 559 F.2d 894 (3d Cir. 1977) and *Davis v. United States Steel Supply,* 581 F.2d 335 (3d Cir. 1978), concluded that the applicable statute of limitations was two years. In so holding, the court in *West* distinguished the *Meyers* and *Davis v. United States Steel Supply* cases on the facts; the case *sub judice* is equally distinguishable.

In both *Meyers* and *Davis v. United States Steel Supply,* the court was faced with allegations of racial discrimination, dealing with sections 1981 and 1982, whereas the instant case contains no allegations of racial discrimination and is brought under § 1983. Further, plaintiff's claim in the instant case deals with the occurrence and effects of an allegedly defamatory statement. In *Meyers,* the court stated, "[Plaintiff's] conduct bears little resemblance to defamation or to intentional infliction of mental distress." *Meyers, supra* at 901.

The court finds the law as applied in *West* is appropriate for the factual setting in this case. As a result, the applicable statute of limitations is two years. Plaintiff alleges the defamation and termination of employment effectively took place on April 29, 1977.[3] Applying a two year limi-

---

**3.** Even considering May 2, 1977 the date plaintiff was allegedly prevented from returning to work, or March 15, 1978, the date of the termi-nation letter, plaintiff's cause of action is time barred.

tation period, plaintiff would have had to file his complaint on or before April 29, 1979. Plaintiff's complaint was not filed until January 5, 1981. Accordingly, plaintiff's claim is time barred.