**Thelma DAVIS, Appellant,**

v.

**UNITED STATES STEEL SUPPLY, DIVISION OF UNITED STATES STEEL CORPORATION.**

**No. 76–1314.**

United States Court of Appeals, Third Circuit.

Argued March 30, 1978.

Decided July 5, 1978.

Robert X. Medonis, Pittsburgh, Pa., for appellant.

R. M. Guttshall, III, S. G. Clark, Jr., J. T. Carney, Pittsburgh, Pa., for appellee.

Michael P. Malakoff, Louise Reiber Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for Daniel Anderson, amicus curiae.

Richard D. Gilardi, Gilardi & Cooper, Pittsburgh, Pa., for Carpenters' District Council of Western Pennsylvania, amicus curiae.

John C. Unkovic, Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Jendoco Construction Corp., et al., amici curiae.

Before ADAMS, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case presents the issue of which Pennsylvania statute of limitation governs an action brought in federal court under 42 U.S.C. § 1981, alleging racially discriminatory employment practices culminating in a wrongful discharge. The federal district courts in Pennsylvania have applied divergent limitation periods in federal Civil Rights Act cases involving racial discrimination in employment.[1] While this court has previously determined the Pennsylvania statute of limitation to be applied in Civil Rights Act suits alleging racial discrimination in the refusal to sell or rent housing, racial discrimination in employment has been implicitly treated as raising a distinct statute of limitation issue. We now have occasion to consider this issue and conclude that the six-year limitation period of 12 P.S. § 31 should have been applied to the complaint in this case, where the issue was raised by defendant's motion to dismiss or, alternatively, for summary judgment.

Plaintiff Thelma Davis' complaint, filed August 13, 1975, alleged that when hired in 1966 she had been the first black non-laborer employee to work for defendant, U.S. Steel Supply. While working as a clerk-typist, her fellow employees harassed her by means of racial slurs, threats and dam-

---

1. *Compare Wilson v. Sharon Steel Corp.,* 399 F.Supp. 403 (W.D.Pa.1975), *remanded on other grounds,* 549 F.2d 276 (3d Cir. 1977); *Bethel v. Jendoco Construction Co.,* Civ.No.76–57 (W.D. Pa., June 2, 1976), *decided on other grounds,* 570 F.2d 1168 (3d Cir. 1978); *Presseisen v. Swarthmore College,* 71 F.R.D. 34 (E.D.Pa. 1976) (all applying two-year limitation period of 12 P.S. § 34), *with Beamon v. W. B. Saunders Corp.,* 413 F.Supp. 1167 (E.D.Pa.1976); *Dudley v. Textron, Inc.,* 386 F.Supp. 602 (E.D. Pa.1975); *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420 (E.D.Pa.1975) (all applying six-year limitation period of 12 P.S. § 31).

age to her clothing. Despite persistent complaints to her supervisor, the complaint alleged that U.S. Steel Supply made no effort to correct the situation and provide plaintiff with a safe workplace. On February 2, 1970, after complaining to her immediate supervisor about slashed clothing, she was discharged, purportedly for " 'her own personal safety' " (¶ 26 of complaint, 10a). The complaint further alleged that U.S. Steel Supply's failure to protect Mrs. Davis from a pattern of racial harassment constituted tacit approval of such harassment. Such tacit approval and her subsequent discharge were alleged to be racially discriminatory conduct, in violation of 42 U.S.C. § 1981. For relief the complaint sought damages under § 1981 for lost wages and fringe benefits, plus costs and attorney's fees.

U.S. Steel Supply responded by filing a motion to dismiss the complaint or, in the alternative, for summary judgment. The brief filed in support of the alternative motions argued that plaintiff's § 1981 action was time barred and that it was precluded by a prior adverse state court judgment. By order of January 14, 1976, the District Court for the Western District of Pennsylvania granted U.S. Steel Supply's motion and dismissed Mrs. Davis' complaint. The district court's accompanying opinion held that plaintiff's § 1981 claim was time barred by application of the two-year statute of limitation specified in 12 P.S. § 34. *Davis v. U.S. Steel Supply,* 405 F.Supp. 394 (W.D.Pa.1976). The opinion did not advert to the state court judgment which was asserted to be *res judicata.* This court must determine whether the district court, in its opinion and order of January 14, 1976, erred in interposing the two-year limitation period of 12 P.S. § 34 to bar Mrs. Davis' § 1981 complaint. We find that the district court did err and therefore we reverse.

Congress has not prescribed a limitation period for actions brought under § 1981 or the other Civil Rights Acts. Ac-

cordingly, federal courts apply " 'the limitation . . . which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law' *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir. 1974) (en banc)." *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 900 (1977). *See also Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Selection of the appropriate forum state statute of limitation requires characterization of the essential nature of the federal claim within the scheme created by the various state statutes of limitation.

Pennsylvania's scheme of statutes of limitation is designed in terms of common law causes of action. Pennsylvania's colonial legislature enacted in 1713 an omnibus statute, now codified as 12 P.S. § 31, that provides a six-year limitation period for, *inter alia,* contract actions and actions of trespass.[2] Nearly two centuries later the Pennsylvania Commonwealth's legislature passed the Act of June 24, 1895, now codified as 12 P.S. § 34, which prescribed a two-year limitation period for a suit "brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death . . . ." The current Code's retention of both Acts as originally enacted complicates determination of the applicable limitation period insofar as the two Acts overlap. This court has previously canvassed the state's judicial construction of these Acts and clarified the operation of Pennsylvania's statutes of limitation scheme. Unless Pennsylvania's highest court alters its interpretation of the Acts or the legislature repeals them, we in this circuit are bound by this court's decision in *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3d Cir. 1977).

*Pennypack Woods* recognized that the Pennsylvania Supreme Court had held that the Act of 1895 repealed the Act of 1713

---

**2.** Trespass actions for assault, menace, battery, wounding and imprisonment were subject to a two-year limitation period in 12 P.S. § 31.

only as to trespass actions which also involved injury to the person, short of death. *Id.* at 902. Trespass actions which do not fall within the precise terms of 12 P.S. § 34 remain governed by the more general 12 P.S. § 31. In construing the precise terms of the Act of 1895, this court has noted its application only to damage actions.[3] Moreover, *Pennypack Woods* considered the statutory reference to injury to the person as encompassing only actions for bodily injury. *Id.*

While 12 P.S. §§ 31 and 34 apply to a broad range of common law and statutory actions, some state statutory causes of action have accompanying limitation periods. For example, Pennsylvania has enacted an Equal Pay Act, 43 P.S. § 336.5 (1968), which creates a private cause of action for wages lost due to discrimination in employment on the basis of sex. The Equal Pay Act expressly contains a two-year statute of limitation. In addition to creating private actions for sex discrimination, Pennsylvania has proscribed employment discrimination on the basis of race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability. Pennsylvania Human Relations Act, 43 P.S. §§ 953, 955. However, victims of discrimination must first resort to administrative remedies within 90 days of the alleged discrimination. *Id.* § 959. The Commission is given one year to investigate the charges and to effectuate conciliation. Only if the state Human Relations Commission fails to settle the dispute within that period or dismisses the complaint may an individual bring a private suit based on the Human Relations Act in state court. *Id.* § 962(c). The Act does not specify a limitation period in which the plaintiff must file such a suit after receiving notification from the Commission of its dismissal of the complaint or its failure to obtain a conciliation agreement. *Id.*

12 P.S. §§ 31 and 34 and the limitation periods associated with the aforementioned statutory rights of action for employment discrimination are each urged upon the court as a source of the statute of limitation to be applied to plaintiff's federal civil rights suit. To choose from among these limitation periods, we must first characterize the essential nature of the plaintiff's federal claim. In characterizing the essence of a § 1981 claim, we look to the complaint's factual allegations concerning defendant's conduct and plaintiff's injury and its requested relief. *Pennypack Woods, supra* at 901.

■ Plaintiff's complaint accuses her employer of racially discriminatory conduct in basically two respects. First, U.S. Steel Supply's supervisory personnel are alleged to have failed to correct, and to have tacitly approved, a pattern of racial abuse directed at Mrs. Davis by her fellow workers. Second, plaintiff alleges that her discharge was in response to her complaints of racial harassment and constituted an unlawful termination of her employment. Plaintiff's complaint cites incidents of abuse and of personal property damage, but not of bodily injury. The gravamen of the complaint does not concern Mrs. Davis' interest in personal security, but rather involves unlawful interference with her rights as an employee. Mrs. Davis implicitly asserts a right to good faith efforts by an employer to correct instances of co-worker racial harassment and a right not to be discharged for complaining of such incidents. Essentially, Mrs. Davis complains that U.S. Steel Supply demeaned her and fired her because of her race. In terms of legal relief, plaintiff's complaint does not seek damages for either property or bodily injury. The complaint seeks back wages and fringe benefits lost as a result of her firing.

U.S. Steel Supply analogizes Mrs. Davis' complaint to a classic tort action for assault, slander or battery, each of which is said to typically involve injury to the person within the meaning of 12 P.S. § 34. U.S. Steel Supply denies the complaint sounds in contract because Mrs. Davis worked without a

---

**3.** *Pennypack Woods* did not apply 12 P.S. § 34 to a § 1981 complaint which sought "a broad range of equitable relief." 559 F.2d at 902.

Mrs. Davis' § 1981 complaint requested only damages, not additional equitable relief.

written contract. We reject both contentions. Mrs. Davis' complaint does not rest its claim for relief on any allegation of bodily injury such as would be encompassed within the two-year limitation of 12 P.S. § 34. Furthermore, Mrs. Davis' complaint alleges an unlawful breach of an existing at-will employment contract and, therefore, is within the precise terms of 12 P.S. § 31.

That part of Mrs. Davis' complaint which alleges unlawful discharge clearly does not resemble a tort action for assault or battery. Even the factual allegations of racial slurs and attacks on her property do not cause her action to be governed by 12 P.S. § 34. Had Mrs. Davis brought suit against her co-workers, who hurled the racial epithets and threatened her person, then the complaint might be analogized to a tort action for assault. But Mrs. Davis did not sue because of bodily injury or even the threat of bodily injury. She sued her employer for subjecting her to a discriminatory status as an employee because of her race. The federal Civil Rights Acts do not create a general federal tort law. *See Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). They create a right to be accorded equal or color-blind status in the pursuit of various legal rights and economic interests. If Mrs. Davis' complaint is to be analogized to tort actions, it would best be analogized, as was the claim of racial discrimination in *Pennypack Woods,* to those torts which involve the wrongful interference with another's economic rights or interests.[4] Such tort actions where bodily injury is not the gist of the complaint or the basis of damages would not be within the precise terms of 12 P.S. § 34 and they would be subject to the six-year limitation period of 12 P.S. § 31.

Having rejected analogizing Mrs. Davis' complaint to tort actions involving bodily injury, we consider its resemblance to state law causes of action for violation of the Pennsylvania Human Relations Act or for breach of an at-will employment contract.

Whether the complaint be perceived as more analogous to a statutory discrimination claim or an implied at law contract action, it would, in either event, have been timely filed within the respective statutes of limitation.

The Pennsylvania Human Relations Act imposes a duty on employers to eschew discriminatory practices. Primary enforcement responsibility of the Act is entrusted to an administrative process. An aggrieved individual must first seek relief from a state or local Human Relations Commission. The statute authorizes initiation of a private suit to enforce the terms of the Act only after the complainant receives notice from the Commission that it has dismissed the complaint or failed to obtain a conciliation agreement. Thus, the private cause of action created expressly by the Act arises not at the time of the discriminatory practice but only after unsuccessful resort to administrative remedies.

Mrs. Davis first resorted to administrative remedies on February 4, 1970, only two days after being fired. She filed a complaint with the Pittsburgh Human Relations Commission which enforced a municipal ordinance that forbade the same employment discrimination practices as are within the jurisdiction of the state-wide Human Relations Commission. The Pennsylvania Human Relations Act expressly authorizes the creation of local commissions to enforce its anti-discrimination provisions. 43 P.S. § 962.1. The local and state commissions are to perform the same functions and to enforce the same laws. *Id.* § 962.-1(d). Thus, when Mrs. Davis filed her complaint with the Pittsburgh Commission, she resorted to the administrative process, the prerequisite to maintaining a subsequent private cause of action for violation of the Pennsylvania Human Relations Act.

After investigation and a public hearing, the local Commission found that U.S. Steel Supply had unlawfully discriminated against Mrs. Davis by discharging her and

4. In *Pennypack Woods,* this court deemed a complaint of racial discrimination in housing analogous to a tort claim which alleges "actual denial of his right to lawfully pursue his business, employment, or personal affairs." *Pennypack Woods, supra* at 902.

otherwise treating her differently from their white employees. The Commission ordered that U.S. Steel Supply pay Mr. Davis $14,274.20 in back pay and that the company implement various affirmative action measures. U.S. Steel Supply appealed the adverse Commission order to the state Court of Common Pleas. That court reviewed the local agency decision and affirmed it. U.S. Steel Supply next appealed to the Commonwealth Court. That court did not conduct *de novo* fact finding but reviewed only the administrative record. In a decision rendered on February 19, 1975, the Commonwealth Court reversed the local Commission's order granting back pay on the ground that the Commission's findings were a legally insufficient basis to support its conclusion of unlawful discrimination. Less than six months later, on August 13, 1975, Mrs. Davis filed her § 1981 complaint in the district court.

A cause of action under 43 P.S. § 962(c) is maintainable only after an adverse decision by the administrative agency. Mrs. Davis did not suffer such a decision until February 19, 1975. Although § 962(c) does not prescribe a limitation period in which the private suit must be filed after the adverse agency decision, six months is hardly dilatory. Thus, were we, for statute of limitation purposes only, to analogize the federal complaint to a claim brought under the Pennsylvania Human Relations Act, we would conclude that the complaint was timely

filed within six months of the arising of the private cause of action.[5]

The Pennsylvania Human Relations Act imposes a broad duty on employees not to practice discrimination in all facets of employment. Employers in Pennsylvania may also be under a more limited duty at common law not to practice discrimination in the termination of at-will employment contracts. Mrs. Davis' complaint, if viewed in the perspective of state law, states an arguable common law cause of action for breach of her at-will employment contract. Such a possible cause of action furnishes a source of the applicable limitation period for the analogous § 1981 complaint.

The traditional common law doctrine of at-will employment contracts permitted either party to terminate an employment relationship at any time for any or no reason. This power to terminate could be qualified only by express contractual provision or by statute. Employees who worked without any written contracts were treated as at-will employees. *See Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 21 A. 157 (1891). This strict common law doctrine has come under assault recently, as many courts have recognized that the economic relationship between employer and employee requires a modification of the employer's unilateral right to discharge an employee.[6] The Pennsylvania Supreme Court

5. We have examined the operation of the private cause of action under § 962(c) only for the purpose of determining the applicable limitation period were we to analogize the federal complaint to a suit brought under the Pennsylvania Human Relations Act. Our reasoning is not meant to imply a conclusion that Mrs. Davis could have pursued her cause of action under the Act after state judicial review of the Commission's order. There is an open question under state and federal law whether the Commonwealth Court's reversal of the Commission's order would be accorded *res judicata* effect in a subsequent private suit brought under either the Human Relations Act or under federal civil rights laws. The *res judicata* force of state judicial review of local administrative adjudications depends on a variety of factors which have not been developed in the record in this case. *See New Jersey Educ. Ass'n v. Burke,* 579 F.2d 764 (3d Cir. 1978); *Mitchell v.*

*NBC,* 553 F.2d 265 (2d Cir. 1977). The district court, in fact, did not reach the *res judicata* issue in dismissing plaintiff's § 1981 complaint. We intimate no view as to the proper *res judicata* effect, if any, that should be accorded the Commonwealth Court's reversal of a finding of discrimination in a subsequent action under the Pennsylvania Human Relations Act or § 1981.

6. For example, the New Hampshire Supreme Court has limited an employer's contractual right to arbitrarily dismiss employees. In *Monge v. Beebe Rubber Co.,* 316 A.2d 549 (N.H.1974), the court recognized a contractual cause of action where an employer acted in bad faith, maliciously, or in retaliation in terminating an at-will employment relationship. California and Indiana courts have also recognized a common law cause of action where an at-will employee's dismissal contravenes an explicit declaration of public policy by the legislature.

reexamined the terminability of at-will employment contracts in *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). On the facts of the complaint before it, a majority of the court held that the plaintiff-employee had not been wrongfully discharged. Given that the court did not foreclose the possibility of modifying the employer's unilateral right to discharge an at-will employee under different circumstances, plaintiff might have sought recovery relying on *Geary.*[7] In that event, Pennsylvania courts would apply the statute of limitation of 12 P.S. § 31. Whether an action for breach of an at-will employment contract is classified as a contract action or a tort action not involving bodily injury, it would be subject to the six-year limitation period of 12 P.S. § 31.

■ In summary, we have concluded on various grounds of analogizing Mrs. Davis' § 1981 complaint to state law causes of action that the six-year statute of limitation of 12 P.S. § 31 should have been applied in this case.[8] Consequently, we reverse the district court's dismissal of plaintiff's complaint and remand for further proceedings.

7. In *Geary,* a salesman, whose employment was at will, alleged that he had been fired for bringing to his company's attention serious defects in the products he was selling. However, the court noted that the complaint showed that the plaintiff by-passed the normal company procedures and may have made a nuisance of himself, disrupting operations. The majority refused on those facts to limit the employer's right to discharge. Yet the court concluded in these general terms:

"It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. . . . But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge."

456 Pa. at 184–85, 319 A.2d at 180. *See also* 456 Pa. at 185–94, 319 A.2d at 180–85 (Roberts, J., dissenting). Mrs. Davis' allegations of racial discrimination in contravention of legislative declarations of public policy could possibly present different circumstances from those in *Geary* which might be the basis for asserting in her complaint a cause of action for wrongful discharge. We do not imply that state courts would grant Mrs. Davis relief on such a theory. However, such a theory is sufficiently plausible to support an analogy, at least for statute of limitation purposes, in an action based on a § 1983 claim.

8. We reiterate that, for statute of limitations purposes, each complaint and different aspects of the same complaint may be treated differently. We hold only that 12 P.S. § 31 applies to actions where the gist of a § 1981 complaint concerns racially discriminatory discharge of an employee under the facts in this record.

*See Petermann v. International Brotherhood of Teamsters,* 174 Cal.App.2d 184, 344 P.2d 25 (1959) (employee dismissed for refusal to commit perjury in testimony before legislative committee); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973) (employee discharged for filing a state workmen's compensation claim against employer).