Majid Ghaidan AL–KHAZRAJI, a/k/a Majid Al-Khazraji Allan, Plaintiff,

v.

SAINT FRANCIS COLLEGE, John Willoughby, Gervase Cain, Kirk Weixel, John Coleman, Rodrique Labrie, Albert Zanzuccki, Adrian Baylock, Marian Kirsch and David McMahon, individually and in their official capacities, Defendants.

Civ. A. 80–1550.

United States District Court, W. D. Pennsylvania.

Sept. 30, 1981.

C. Kent Price, Harrisburg, Pa., Paul D. Kruper, Caroline Mitchell, Pittsburgh, Pa., for plaintiff.

Nick S. Fisfis, Bethel Park, Pa., for defendants.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

Majid Ghaidan Al-Khazraji, Ph.D., was employed for nearly six years as an associ-

ate professor in the Department of Behavioral Science at Saint Francis College, at Loretto, Pennsylvania. Al-Khazraji is a United States citizen of Iraqui national origin, and a member of the Muslim faith. He received two advanced degrees in this country: a masters degree from Cornell University and a doctorate from the University of Wisconsin.

On February 10, 1978, the tenure committee of Saint Francis College completed its deliberations and voted to deny tenure to plaintiff. The Board of Trustees ratified the recommendation on February 23, 1978. Plaintiff appealed this decision within the institution but the tenure committee voted against reconsideration of plaintiff's application.

On March 20, 1978, Al-Khazraji received a one-year written contract from the college for the 1978–79 academic year. This contract specifically stated that plaintiff's appointment as a full-time faculty member would not be renewed at the conclusion of that academic year. Plaintiff completed the contract, and was officially severed from the faculty on March 20, 1979.

In October of 1980 plaintiff filed a *pro se* complaint against St. Francis College and the individual trustees. He initially alleged that defendants had engaged in employment discrimination in violation of Title VII of the Civil Rights Act of 1964.[1] Subsequently, plaintiff secured counsel and filed amended complaints which additionally alleged violations of 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, as well as violations of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* The thrust of all these claims is that defendants denied tenure to plaintiff due to his national origin (Iraqui), religion (Muslim) or race (Arabian), in violation of federal law and the United States Constitution.

Defendants responded with a bevy of motions aimed at dismissing and striking the various claims brought by plaintiff.[2] By order dated February 9, 1981, this court dismissed plaintiff's claim under 42 U.S.C. § 1986 as untimely, but denied the remaining motions.[3]

Defendants now urge this court to reconsider its order of January 9, 1981, and dismiss the claims founded on Title VII, 42 U.S.C. §§ 1981, 1983, 1985(3) and the Pennsylvania Human Relations Act. The issues now have been fully briefed by the parties and, for the following reasons, the motion of defendants to reconsider will be granted in part and denied in part.

## II. *Title VII Claims*

■ Defendants first urge that plaintiff's claims under Title VII of the Civil Rights Act of 1964 should be dismissed in their entirety, as being untimely. Defendants take the position that any alleged discrimination occurred on February 10, 1978, when the tenure committee recommended that tenure be denied. Defendants argue that plaintiff had 180 days from that date to file a complaint with the EEOC, which he failed to do. Plaintiff rejoins, however, that the 180-day limitation period embodied in Title VII commenced on March 20, 1979, when he exhausted his internal appeals and was officially discharged. For the following reasons, we are compelled to conclude that plaintiff's Title VII claim is untimely.

Title VII of the Civil Rights Act of 1964 requires that aggrieved persons file a complaint with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred ..." 42 U.S.C. § 2000e–5(e). This limitation period, while guarantying the protection of the civil rights laws to those who promptly assert their rights, also protects employers from the burden of defending claims arising from employment decisions that are dated. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–464, 95 S.Ct. 1716, 1721–1722, 44 L.Ed.2d 295 (1975).

---

1. 42 U.S.C. § 2000e *et seq,* as amended.

2. No brief accompanied defendants' original motions.

3. This court also dismissed the allegations predicated on Title VII in plaintiff's second and third complaints as untimely. However, we left intact plaintiff's Title VII claim as it appears in his original complaint.

In a case strikingly similar to the one at bench, the Supreme Court recently held that the limitation period commences—for a college professor who believes that he has been discharged in violation of Title VII—at the time the adverse tenure decision is made and communicated to him. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). There the Board of Trustees of Delaware State College formally voted to deny Professor Ricks tenure on March 13, 1974. Ricks was offered a "terminal" contract to teach one additional year, after which time his employment relationship would end. Ricks executed the contract, and initiated grievance procedures within the college. On September 12, 1974, the Board notified Ricks that his grievance had been denied. On April 4, 1975, the plaintiff filed a complaint with the EEOC.

The Supreme Court held that the claim was untimely because Ricks had not filed the charge within 180 days of the date the college initially determined to deny him tenure, namely, March 13, 1974. The Court rejected the contention that the statute of limitations began to run after the one-year "terminal" contract expired, or when the plaintiff exhausted the internal grievance procedures of the college. The Court concluded that "the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later." 449 U.S. at 258, 101 S.Ct. at 504.

Likewise, in the instant case, we are bound to conclude that the statute of limitations began to run, for purposes of filing the Title VII action, at the time St. Francis College made its official decision to deny tenure and communicated that decision to Al-Khazraji, namely, on February 10, 1978.[4]

This follows although plaintiff accepted a "terminal" contract for an additional year, and notwithstanding the institution of grievance procedures within the institution.

The Supreme Court's holding in *Ricks* compels the finding that, once the tenure committee voted to deny plaintiff tenure on February 10, 1978, the alleged discriminatory act was a *fait accompli*. Plaintiff then had 180 days to file a complaint with the EEOC.[5] Because he failed to comply with the statutory time period, plaintiff's claim under Title VII must be dismissed.

### III. *Section 1985(3) Claims*

■ We further find that Al-Khazraji has failed to state a claim under 42 U.S.C. § 1985(3). Plaintiff, in Count II of his second complaint, alleges that defendants conspired to violate rights secured by Title VII of the Civil Rights Act of 1964, as well as the Pennsylvania Human Relations Act.[6] He alleges that the conspiracy gives rise to a cause of action under 42 U.S.C. § 1985(3). We disagree.

The Supreme Court has specifically ruled that § 1985(3) creates no substantive rights by itself. Rather, it is a remedial statute, providing a civil cause of action when some otherwise defined federal right is breached by a conspiracy in the manner defined by that section. *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979). There the Court held that Title VII provides no basis for a 1985(3) action, because to allow such a detour would authorize an avoidance of most if not all of the detailed and specific provisions of Title VII:

> [W]e conclude that § 1985(c) may not be invoked to redress violations of Title VII . . . Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title

---

4. Or, at the very latest, on February 23, 1978, when the Board of Trustees ratified the decision of the tenure committee.

5. Even if the 300-day period is applicable, plaintiff's suit is untimely.

6. 43 P.S. § 951 *et seq.*

VII cannot be the basis for a cause of action under § 1985(c).

442 U.S. at 378, 99 S.Ct. at 2352.

Al-Khazraji, having failed to meet the statutory filing requirements of Title VII, may not salvage his claim by submersion within the provisions of 42 U.S.C. § 1985(3). Nor may a state statute, such as the Pennsylvania Human Relations Act, serve as a predicate for a cause of action under § 1985(3) since the latter was meant to provide redress for violations of federal rights. *See Novotny, supra,* 442 U.S. at 376, 99 S.Ct. at 2351. As a result, plaintiff has failed to state a cause of action under 42 U.S.C. § 1985(3), and that claim must be dismissed.

## IV. *Claims Under Sections 1981 and 1983*

Defendants next contend that plaintiff's claims under 42 U.S.C. § 1981 and § 1983 are time-barred by the relevant statute of limitations. We disagree.

■ The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, contains no specific statute of limitations. Federal courts, in adjudicating civil rights suits under the Act, are therefore bound to apply the period of limitations that governs the most nearly analogous state law claim. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Liotta v. National Forge Co.,* 629 F.2d 903 (3d Cir. 1980).

■ Courts within the Third Circuit have, in countless cases, considered the question of the applicable statute of limitations in federal civil rights suits in which a plaintiff alleges racial discrimination in employment. At least to date, these courts have uniformly concluded that such actions are governed by the 6-year period of limitations set forth in 12 P.S. § 31.

The leading case is *Davis v. United States Steel Supply,* 581 F.2d 335 (3d Cir. 1978). There the plaintiff brought suit under 42 U.S.C. § 1981, alleging racially discriminatory employment practices. Specifically, Davis alleged harrassment by her fellow employees due to race, which ultimately led to her discharge when she persisted in complaining to her supervisor.

The Court of Appeals considered with care the question of the applicable period of limitations under Pennsylvania law. The Court likened the claim to a cause of action for "an unlawful breach of an existing at-will employment contract," or to "those torts which involve the wrongful interference with another's economic rights or interests." 581 F.2d at 339. It therefore concluded that Ms. Davis' claim fit within the broad 6-year limitations period set forth in 12 P.S. § 31.[7] The Davis court specifically rejected the argument that the type of employment discrimination alleged was subject to the 2-year period of limitations posited in 12 P.S. § 34. That provision, said the court, was limited to actions in which damages were sought for bodily injury. 581 F.2d at 339.

In the instant case, *Davis* would be dispositive except for the change in Pennsylvania law. Effective June 27, 1978, the General Assembly repealed 12 P.S. § 31 *et seq.*, and enacted a new and more complex statute of limitations. *See* 42 Pa.C.S.A. § 5521 *et seq.*[8] Defendant contends that Al-Khazraji's claim is no longer governed by the 6-year limitations period, but rather by one of the following provisions: the 1-year limitation contained in 42 Pa.C.S.A. § 5523, the 2-year limitation contained in 42 Pa.C.S.A. § 5524, or the 90-day limitation period embodied in the Pennsylvania Human Relations Act, 43 P.S. § 959. If any of these enactments are apposite, plaintiff's actions under 42 U.S.C. §§ 1981 and 1983 are untimely, because plaintiff did not raise these claims until November 7, 1980, nearly three years after the cause of action allegedly arose.

---

7. *See also Skehan v. Bd. of Trustees of Bloomsburg State Col.,* 590 F.2d 470, 477 (3d Cir. 1978), where the court likened a professor's claim for discriminatory discharge to "the state law claim of wrongful interference with a contract," and applied the 6-year statute of limitations of 12 P.S. § 31.

8. Act of 1976, July 9, P.L. 586, No. 142, generally effective June 27, 1978.

We are not persuaded, however, by defendants' argument. None of these provisions are even vaguely analogous to an allegation of racial discrimination in terminating an employment contract. The 1-year statute of limitations contained in 42 Pa.C.S.A. § 5523 applies to actions for libel, slander, invasion of privacy, and to certain actions on bonds. The 2-year period of limitations found in 42 Pa.C.S.A. § 5524 applies primarily to actions for injury to the person or property. They hardly provide an analogue to a claim for discriminatory termination of a college professor's employment contract.[9]

The sole question that remains is whether the applicable statute of limitations is the 4-year period contained in 42 Pa.C.S.A. § 5525, or the 6-year period contained in 42 Pa.C.S.A. § 5526. Both provisions in some way relate to actions for breach of contract, and both are arguably analogous to the sort of action at bench.

42 Pa.C.S.A. § 5526, which contains a 4-year statute of limitations, applies to various contracts for sale, oral contracts, and contracts implied in law. As indicated in the Official Source Note to this section, it is patterned after the statute of limitations contained in the Pennsylvania Uniform Commercial Code, which provides for a 4-year period of limitations in contracts for sale. *See* 12A P.S. § 2–725. We fail to perceive any portion of § 5526 that may be anologized to an action for alleged racial discrimination in denying tenure to a college professor. We re-emphasize that such an action may be likened to an action for unlawful termination of a written employment contract or, alternatively, to an action for tortious interference with an employment contract. *See Davis v. United States Steel Supply, Inc., supra,* 581 F.2d at 339;

*Skehan v. Bd. of Trustees of Bloomsburg State Col., supra,* 590 F.2d at 477. Section 5526 therefore deals with a narrow category of contracts which is inapplicable to the instant case.

On the other hand, 42 Pa.C.S.A. § 5527, which establishes a 6-year statute of limitations, is significantly broader in scope. It applies to any "action upon a contract, obligation or liability founded upon a bond, note or other instrument in writing ..." This provision would appear to encompass actions for unlawful termination of written contracts, which may be analogized to the case before us.[10]

Moreover, although the statute specifically mentions neither actions for unlawful termination of written employment contracts nor actions for tortious interference with employment contracts, it is crucial to note that § 5527 of the new Act contains a broad saving provision. It provides that the 6-year statute of limitations will govern any civil action "which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by § 5531 (relating to no limitation.)" 42 Pa.C.S.A. § 5527(6). Thus even if an action for discriminatory termination of a written employment contract did not fall squarely within the language of § 5527(2), relating to written contracts, it would be governed by the saving clause of § 5527(6). In either case, the 6-year limitation period is applicable.[11]

Our conclusion that the 6-year statute of limitations should continue to apply is fortified by our belief that continuity in such procedural matters is crucial. If individuals are to be guaranteed a realistic ability to pursue federal civil rights actions, the limi-

---

**9.** As for the Pennsylvania Human Relations Act, we find it to be wholly inapposite.

**10.** As the Official Source Note to § 5527 indicates, this section is patterned in part after 12 P.S. § 31, which formerly provided a 6-year statute of limitations for breach of contract and tortious interference with contracts, and we note that in Pennsylvania the broad run of contract actions have fallen under a 6-year lim-

itation period for over 250 years. *See* Act of March 27, 1713 (1 Sm.L. 76, § 1).

**11.** In a number of cases since the enactment of the new Pennsylvania statute, courts have continued to apply a 6-year limitation period in similar civil rights suits, albeit under the old statute. *See Liotta v. National Forge Co.,* 629 F.2d 903, 906 (3d Cir. 1980); *Skrocki v. Caltabiano,* 505 F.Supp. 916, 920 (E.D.Pa.1981).

tations period for such actions should not lightly be changed. Citizens who turn to the courts to vindicate their civil rights, it must be remembered, are rarely trained in the niceties of Pennsylvania jurisprudence. And it is unwise for federal courts to limit the period of limitations, under the Civil Rights Act, absent a clear and specific change in state law mandating the diminution.[12] We are satisfied that no such change has occurred in Pennsylvania law with respect to the claim before us today.

### V. Miscellaneous Contentions

■ The remainder of the contentions raised by defendants are without merit, and require brief comment only. Defendants assert that Al-Khazraji's claim under 42 U.S.C. § 1983 should be dismissed because plaintiff has failed to demonstrate state action.

This issue is controlled by *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961). The question is whether the Commonwealth of Pennsylvania, in the language of Mr. Justice Clark, "has so far insinuated itself into a position of interdependence" with St. Francis College that it must be recognized as a joint participant in the alleged discriminatory activity. Plaintiff has at least raised a factual issue in this regard, because he has alleged that St. Francis College "has received financial aid from the United States of America and the Commonwealth of Pennsylvania." *See* plaintiff's second complaint filed Nov. 7, 1980, at p. 2. Although this broad allegation is hardly dispositive of the issue, federal courts have been reluctant to dismiss civil rights actions for want of state action unless the facts have been fully explored. As the Court of Appeals has stated:

It would perhaps be possible for us to decide this last issue (relating to state action) on the present record but we think we should not do so. Very important constitutional questions are present-

ed and the Supreme Court has repeatedly informed us that such difficult issues should not be decided except upon a full record and after adequate hearing.

*Braden v. University of Pittsburgh*, 477 F.2d 1, 4–5 (3d Cir. 1973); *See also Weise v. Syracuse University*, 522 F.2d 397 (3d Cir. 1975). We therefore conclude that it is premature to dispose of the state action issue at this juncture, until a complete record is established.

■ Next, defendants urge that plaintiff's claim under 42 U.S.C. § 1981 should be dismissed because it is based on national origin and not on racial grounds. A number of courts have admittedly held that discrimination based upon national origin or ancestry is not actionable under § 1981. *See Saad v. International Secur. Services, Inc.*, 465 F.Supp. 33 (D.C.D.C.1978) (alleged discrimination on account of Arabian national origin not actionable under § 1981). However, as one scholar has noted:

'Section 1981 was enacted to eradicate disparate treatment between the white majority and clearly identifiable minorities,' and there are many cases holding that victims of discrimination based upon national origin or ancestry can use § 1981 to vindicate the rights set forth in the Act.

Antieau, Federal Civil Rights Act, § 23 (1980), *quoting Ridgeway v. International Brotherhood of Electrical Workers*, 466 F.Supp. 595, 597 (N.D.Ill.1979).

Moreover, we observe that the distinction between "race" and "national origin" is an elusive one, and frequently turns on semantics rather than significant differences. Although the exact word "race" may not appear in plaintiff's third complaint, which raised the claim under 42 U.S.C. § 1981, plaintiff's position from the outset has been that he was subject to disparate treatment because of "national origin, religion, and/or race."[13] We therefore decline to dismiss plaintiff's action under § 1981 simply be-

---

**12.** This is not to dispute that, sometime in the future, Pennsylvania case-law could effectuate a clear and specific change in the relevant period of limitations.

**13.** *See* plaintiff's original complaint at page 1 and the second complaint at page 3.

cause he omitted the word "race" in his third complaint. In our view, it is a technical defect of little significance. The thrust of plaintiff's claim, namely, that he was denied tenure by St. Francis College because he is an Arabian born in Iraq, is clear to all concerned, and may serve as the basis for a civil rights action under 42 U.S.C. § 1981.

As a final matter, defendants point to the fact that three different complaints have been filed on behalf of plaintiff in this action. The original complaint was filed *pro se* by plaintiff on October 30, 1980. The so-called first amended complaint was filed by plaintiff's attorney on November 7, 1980. The so-called second amendment was filed *pro se* by plaintiff on December 22, 1980. Defendants assert that because the second amendment—which solely raised Title VII claims—was dismissed by the court as untimely, the preceding complaints should be dismissed or stricken.

We decline to adopt this harsh approach. First, we note that the second amendment was filed *pro se* by plaintiff and it would be unjust to allow this amendment, which was obviously designed as a mere addendum to the original complaint, to supersede and nullify the complaints that preceded it.

Secondly, we note that there is some uncertainty as to which amendment in fact came last. Although plaintiff's amendment was filed after that of his lawyer, plaintiff's amendment was mailed, and the cover letter is dated November 5, 1980. Thus it appears that plaintiff actually prepared and mailed his *pro se* amendment before his attorney filed the so-called first amended complaint.

In view of these facts, we will treat the first amended complaint, prepared by plaintiff's counsel and filed November 7, 1980, as the operative amendment in the instant action.

An appropriate order will follow.