**Isabelo ALVAREZ, et al., Plaintiffs,**

v.

**CITY OF PHILADELPHIA, et al., Defendants.**

**Civ. A. No. 77–4424.**

United States District Court, E.D. Pennsylvania.

May 10, 1983.

Public Interest Law Center of Philadelphia, Luis Diaz, Prather G. Randle, Michael Churchill, Frank Finch, III, William H. Ewing, Arnold P. Borish, Philadelphia, Pa., for plaintiffs.

James M. Penny, Jr., Deputy City Sol., Philadelphia, Pa., for all defendants.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

### I. INTRODUCTION

This employment discrimination action is brought by ten Puerto Rican Americans who allege that the City of Philadelphia's ("the City") use of a written selection examination for police force applicants to rank applicants for pre-employment consideration ("screening") unlawfully excluded them from the possibility of employment. Plaintiffs allege that this exclusion was discrimination based on their "color, race and national origin" (Complaint # 32). They seek declaratory and injunctive relief pursuant to 42 U.S.C. § 2000e, 42 U.S.C. § 1981, 42 U.S.C. § 1983 and the Fourteenth Amendment. Plaintiffs also invoke the Court's pendent jurisdiction to consider alleged violations of state law.

Before the Court are plaintiffs' motions for class certification and a preliminary injunction and defendants' motion to dismiss. For the reasons discussed below, a limited plaintiffs' class will be certified; the court defers ruling on the remaining matters pending a conference to be held at the request of plaintiff.

### II. CLASS CERTIFICATION

A. *Class Definition*

Plaintiffs seek certification of a class which includes:

all past, present and future Hispanic applicants to the Philadelphia Police Department for the police patrolmen positions who have been or will be foreclosed from placement in those positions because

of that department's use of discriminatory examinations and other procedures which adversely and discriminatorily impact on them, and all past, present and future Hispanic individuals who would have applied for the position of police patrolman but for defendants' discriminatory practices.

Their complaint deals exclusively with the City's use of discriminatory written examinations. Accordingly, we exclude from our discussion, and from the class, persons who were allegedly denied employment because of unspecified "other procedures." [1]

■ Plaintiffs also seek to represent "all Hispanic individuals who would have applied for the position of police patrolman but for defendants' discriminatory practices." Threatened injury can constitute injury-in-fact where the threat is so great that it discourages the threatened party from even attempting to exercise his or her rights. *Howard v. New Jersey Department of Civil Service*, 667 F.2d 1099, 1103 (3d Cir.1981). In this case, the alleged threat of discrimination posed by the written examination did not discourage plaintiffs from applying for the job. A subgroup of class members composed of persons who never applied is inappropriate because "... an attempt to identify those individuals who were chilled would be a burden on the court and require a large expenditure of valuable court time." *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); "Such a group is indefinable and unidentifiable." *Capaci v. Katz & Besthoff, Inc.*, 72 F.R.D. 71, 78 (E.D.La.1976). This subgroup will be excluded from the proposed class.

■ Plaintiffs use the word "Hispanic" with regard to the proposed class. The

police department does not recognize the term "Hispanic," but it employs "Spanish surnamed" to include all persons of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent. *Ulloa v. City of Philadelphia*, 95 F.R.D. 109 at 112–13 (E.D.Pa. 1982). The race or national origin of police department job applicants is determined by self-designation. *Id.* This definition has been accepted in related cases before this Court which attack other aspects of the City's police hiring process. *See* n. 1. Further refinement of this definition may be appropriate if we reach the issue of remedies in view of the self-designated character of the class. For the present purpose, "Hispanic" is defined as all persons designating themselves to be of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent. *See generally, Garcia v. Rush-Presbyterian-St. Lukes Medical Center*, 80 F.R.D. 254 (N.D.Ill.1978); *Black Grievance Committee v. Philadelphia Electric Co.*, 79 F.R.D. 98 (E.D.Pa.1978); *Jones v. Milwaukee County*, 68 F.R.D. 638 (E.D.Wis.1975); *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1 (E.D.Pa.1975); *United States v. Texas*, 342 F.Supp. 24 (E.D.Texas 1971), *aff'd*, 466 F.2d 518 (5th Cir.1972); and *Lopez Tijerina v. Henry*, 48 F.R.D. 274 (D.N.M.1969), *appeal dismissed*, 398 U.S. 922, 90 S.Ct. 1718, 26 L.Ed.2d 86 (1970) (Douglas, J., dissenting).

## B. Filing Limitations

### i) Title VII

■ Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), provides that a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice.[2] The time-

---

1. Two other cases before this court complain of the discriminatory use and application of another City Police Department hiring procedure, the background investigation. *Ulloa v. City of Philadelphia* and *Lopez v. City of Philadelphia*, 95 F.R.D. 109 (E.D.Pa.1982) (class certification ordered in both cases July 30, 1982).

2. In deferral states, Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), provides that an EEOC charge must be filed within 300 days of the

alleged unlawful employment practice. *Mohasco v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Wajda v. Penn Mutual Life Insurance Co.*, 528 F.Supp. 548, 563 (E.D.Pa. 1981). Whether we employ a 180 day or 300 day filing period is here immaterial.

Defendant does not argue that plaintiffs failed to comply with 42 U.S.C. § 2000e–5(c) which requires commencement of proceedings with a state anti-discrimination agency, if one exists, and the subsequent expiration of sixty

liness of an EEOC charge depends on when the alleged unlawful employment practice occurred rather than the inevitable but neutral consequences of that practice. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Bronze Shields, Inc. v. New Jersey Department of Civil Service*, 667 F.2d 1074, 1083 (3d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982) (where plaintiffs complained of the state's refusal to place them on a hiring roster, the filing period began to run on the date of notice of exclusion from the roster; the court rejected a "continuing violation" theory); accord, *Hood v. New Jersey Department of Civil Service*, 680 F.2d 955 (3rd Cir.1982).

■ The 1975 examination which plaintiffs took was given on May 31, 1975. Notice of the result was mailed to every candidate between November 17 and 19, 1975. If a candidate was unsuccessful, the notice advised him of that fact. A successful candidate was notified of his examination-based position on the list of persons eligible for further evaluation. (Toomey Affidavit, Docket No. 5).

The named plaintiffs filed their charges with the EEOC on December 24, 1976 (Ex. B, Docket No. 5). This was timely; the discriminatory practice of which they complain—the use of an examination which results in low rankings on an eligibility roster—cannot be said to have ceased when they received notice of their ranking. The ranking attached to plaintiffs so long as that roster was used. The named plaintiffs, unlike plaintiffs in *Bronze Shields* who failed their entrance examination, would be continually aggrieved by the City's policy of hiring in such order from the list. As plaintiffs filed their EEOC charges while that list was still in use,[3] their filing was timely.

*See Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1175 (3d Cir.1978).

■ A plaintiff may bring a class action on behalf of those who have not filed EEOC charges. *Green v. U.S. Steel Corp.,* 481 F.Supp. 295, 300 (E.D.Pa.1979). However, named plaintiffs cannot represent those persons who could not have timely filed EEOC charges at the time plaintiffs did so. *Wetzel v. Liberty Mutual Life Insurance Co.,* 508 F.2d 239, 246 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Among this latter group are those who failed the test. Those persons knew they would not be hired on or about November 19, 1975, when they received notices from the City. For them, the limitations period began to run then, and it expired before plaintiffs filed their charges on December 14, 1976. 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *see Sussman v. Vornado,* 90 F.R.D. 680, 688 (D.N.J. 1981). Similarly all the 1972 test takers, whether they passed or failed are time barred. Those who failed knew they would not be hired when notified of failure and even those who passed could not be hired when the 1972 eligibility roster was superseded by that of 1975.[4]

Plaintiffs may represent 1978 test takers, whether they passed or failed, for two reasons. First, the City contends, though for other purposes, that the 1975 and 1978 tests were similarly designed and constructed. (N.T. 699; D–13 at 2). Both were prepared with the help of the Educational Testing Service ("ETS"). (N.T. 119, 277–278). The City's experts agree that because of high correlations between the two tests, inferences about the validity of one are applicable to the other. (N.T. 403–04; 703–04; 796). Thus, plaintiffs' complaints about the

---

days before filing an EEOC charge. Such an agency exists in Pennsylvania. 43 Pa.Cons. Stat.Ann. § 951 *et seq.* Section 5(c) is satisfied if complainants brought their complaints to the EEOC and relied on it to refer charges to the appropriate state agency. *See, Mohasco, supra; New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); and *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

**3.** The next hiring roster was based on scores generated by the 1978 written examination.

**4.** Two of the three named plaintiffs who took the 1972 test failed it but the record does not indicate that they or anyone they purport to represent timely filed an EEOC complaint regarding that examination.

1975 and 1978 tests merge; the tests are "substantial equivalents." *United States v. City of Chicago,* 549 F.2d 415, 430 n. 13 (7th Cir.1977), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). Second, the 1978 test was designed and administered during the pendency of this litigation. The use of the 1978 test was immediately contested by plaintiffs and it was the subject of testimony during the extended hearing on plaintiffs' motion for an injunction. It would be improper to declare 1978 test takers time barred from this litigation.

■ The filing limits under Title VII are not jurisdictional and are subject to equitable tolling. *Bronze Shields, supra* at 1984. The filing limitation for 1978 test takers has been tolled; of the 1978 test takers neither those who passed nor those who failed are barred by a limitations period. The creation of subclasses for each test will be considered after counsel have an opportunity to be heard.[5]

ii) *42 U.S.C. § 1981*

■ The statute of limitations on a § 1981 claim begins to run at the time of the alleged unlawful act. *Delaware State College, supra.* The § 1981 limitations period is ordinarily the most appropriate one under state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). It is not controlled by time limitations on an employee's right to sue in a Title VII case. *Hackett v. McGuire Bros.,* 445 F.2d 442, 444

n. 1 (3d Cir.1971). Selection of the appropriate Pennsylvania statute of limitation requires consideration of the nature of the federal claim and the operation of the various Pennsylvania limitations statutes. *Davis v. U.S. Steel Supply,* 581 F.2d 335 (3d Cir.1978); *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3d Cir.1977).

Plaintiffs complain that they were the victims of discrimination in the department's hiring process. These allegations are best analogized to torts involving the wrongful interference with another's economic rights and interests. *See, Davis, supra* (racial harassment on job and discriminatory discharge); *Meyers, supra* (discriminatory refusal to sell house).

■ This action commenced on December 28, 1977. Under Pennsylvania law in effect prior to June 27, 1978, the trespass or contract limitations period of six years (12 Pa.Stat. § 31) was held more appropriate in employment discrimination actions than the two-year limitation in actions involving personal injury (12 Pa.Stat. § 34).[6] *Davis, supra; Meyers, supra; Alston v. Allegheny Ludlum Steel Corp.,* 465 F.Supp. 171 (W.D. Pa.1978), *aff'd mem.,* 594 F.2d 854 (3d Cir.), *cert. denied,* 442 U.S. 943, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979) (discriminatory promotional practices).[7]

■ Claims arising no more than six years before December 28, 1977, not having

---

5. For the reasons discussed above, the City's Motion to Dismiss the Title VII claims of all those who took the 1972 police employment examination and those who failed the 1975 examination but did not take the 1978 exam will be granted.

6. Under the Pennsylvania limitations laws effective June 27, 1978, 42 Pa.Cons.Stat.Ann. § 5521 *et seq.,* actions for economic torts are subject to a six-year limitation period. Actions brought pursuant to the civil rights acts that are analogized to economic torts are subject to the same limitations period. *See,* 42 Pa.Cons. Stat.Ann. § 5527(6); *Knoll v. Springfield Township School District,* 699 F.2d 137 (3d Cir.1983); *accord, Al-Khazraji v. Saint Francis College,* 523 F.Supp. 386, 389–391 (W.D.Pa. 1981).

7. The Pennsylvania Human Relations Act, 43 Pa.Cons.Stat.Ann. § 951 *et seq.,* does not specify a limitation period in which a plaintiff must file suit after receiving notification from its Human Relations Commission of its dismissal of the complaint or its failure to obtain a conciliation agreement. 43 Pa.Cons.Stat.Ann. § 962(c); *see, Davis v. U.S. Steel Supply,* 581 F.2d 335, 338 (3d Cir.1978); *Al-Khazraji v. Saint Francis College,* 523 F.Supp. 386, 390 n. 9 (W.D.Pa.1981); *Beamon v. W.B. Saunders Co.,* 413 F.Supp. 1167, 1174–75 (E.D.Pa.1976). In *Grim v. CNA Financial Corporation,* 8 Pa.D. & C.3d 447 (1978), the court held a six-year period appropriate in employment discrimination actions brought under the state Human Relations Act.

been barred when this action commenced, may appropriately be included in the § 1981 class action. This is also the limitation period for plaintiffs' claims pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983. *See, Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) *(per curiam); Polite v. Diehl,* 507 F.2d 119 (3d Cir.1974) *(en banc).*

### C. *Federal Rule of Civil Procedure 23(a)*

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The prerequisites of 23(a) are mandatory. *Alexander v. Gino's, Inc.,* 621 F.2d 71, 74 (3d Cir.) *(per curiam), cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).

### i) *Numerosity*

■ Plaintiffs allege that over 400 Hispanics "did not proceed beyond taking the May, 1975 employment examination, i.e., were not hired as a result of screening procedures including, but not limited to, the entrance examination. Of these, it is alleged 150 passed the 1975 test but were excluded from employment because of discriminatorily low ranking on the eligibility roster.

■ The numerosity test is one of practicability of joinder. Impracticability is a subjective determination based on number, expediency and inconvenience of trying individual suits. *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 365 (E.D.Pa. 1980); 7 Wright and Miller, Federal Practice and Procedure § 1762 (1972). We are satisfied, at this stage of the litigation, that those persons in the proposed class are sufficient in number so that their joinder is impracticable.

### ii) *Common Questions*

We find commonality on the issue of the entrance examination. The validity of this practice necessarily raises common questions of law and fact. In this case, a departmental policy common to all class members, the use of an entrance examination for arbitrary and discriminatory determinations with regard to every class member, is alleged. This alleged departmental misuse of an examination is an issue of fact and law common to all members of the class.[8]

### iii) *Typicality*

■ Plaintiffs allege a common fact pattern in connection with the class and seek the same remedies on the basis of the same legal theories. The named plaintiffs' claims are not based on unique circumstances or legal theories which will receive disproportionate emphasis compared with those of the proposed class as limited above. *See,* 7 Wright and Miller, Federal Practice and Procedure § 1764 (1972); *Alexander, supra.* Where interests coincide, typicality is satisfied. *Scott v. Univ. of Delaware,* 601 F.2d 76 (3d Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *see, Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657 (E.D.Pa.1980).

### iv) *Fair and Adequate Representation*

*Count I (Title VII)*

We are satisfied that plaintiffs' attorneys are adequate. Although plaintiffs, 1975 test takers who passed the examination, may be able to represent the class of those who took and passed both the 1975 and 1978 examinations, it would be preferable to add a named plaintiff who took and passed the 1978 test. Plaintiffs cannot adequately represent those who failed the 1978 test because it has been represented that all present named plaintiffs have passed either

---

**8.** There is a potential difference in interest between those who passed the examination and those who failed. But this is not a problem with regard to the commonality of issues; rather, it presents a question of the adequacy of representation, which will be addressed below.

the 1975 or 1978 examination. There is no causal connection between their loss of a job opportunity and test failure; they have suffered no injury in fact from test failure. *See Howard, supra* at 1101; *Bronze Shields, supra* at 1080 n. 12. Therefore, individuals who failed the 1978 test may ultimately be included in the class only if a person who took and failed the 1978 test is joined as a named plaintiff and class representative.

*Counts II, III and IV (42 U.S.C. §§ 1981, 1983 and Fourteenth Amendment)*

The representatives of the 1975 test passers and 1978 test takers, if joined, on the Title VII counts are also adequate class representatives of the 1975 passers and 1978 test takers on the civil rights counts. The 1972 test takers and 1975 test failers who are barred as to Title VII are not time barred as to these counts which may relate back to December 29, 1971. Since three named plaintiffs took the 1972 test, one passing and two failing, there is adequate representation on these counts except as to 1975 test failers. These persons may be included in the class only if adequate representations are joined as named plaintiffs and class representatives.[9]

### D. *Federal Rule of Civil Procedure 23(b)(2)*

Plaintiffs seek certification pursuant to Fed.R.Civ.P. 23(b)(2):

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...

Plaintiffs' allegations, if proved, are actionable for reasons applicable to the entire class. An equitable remedy directed at such practices would benefit the entire class. This Title VII action is "particularly fit for (b)(2) treatment." *Wetzel, supra* at 250.

Accordingly, we shall certify the following classes:

*Count I (Title VII):*

All persons of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent who have not been selected for the position of Philadelphia police officer because of a discriminatorily low ranking among passers of the 1975 or 1978 examinations or because they failed the 1978 examination.

*Counts II, III and IV (42 U.S.C. §§ 1981, 1983 and Fourteenth Amendment):*

All persons of Mexican, Puerto Rican, Cuban, Latin American or Spanish descent who no earlier than December 29, 1971 have failed to be selected for the position of Philadelphia police officer because of discriminatory use or application of the written entrance examination.

This certification is conditional pending further consideration of the adequacy of representations and the need for subclasses. *See,* Fed.R.Civ.P. 23(c)(1).

---

**9.** The creation of subclasses for each test will be considered at a later date.