667 F.2d 1099
 27 Fair Empl.Prac.Cas. 1690,
27 Empl. Prac. Dec. P 32,288
HOWARD, Frank, Jr., Rubin J. Battle, Floyd Bostic, Jr.,
Lynette Crawford, Charles E. Harris, and Olivia C.
Howard, and others similarly situated,
v.
NEW JERSEY DEPARTMENT OF CIVIL SERVICE, New Jersey Civil
Service Commission, S. Howard Woodson, Jr. in his official
capacity as President of the New Jersey Civil Service
Commission, Howard F. Haneman, in his official capacity as a
Commissioner of the New Jersey Civil Service Commission,
Henry R. Leiner, in his official capacity as a Commissioner
of the New Jersey Civil Service Commission, Leonard Simmons,
in his official capacity as a Commissioner of the New Jersey
Civil Service Commission, Ralph P. Shaw, in his official
capacity as Chief Examiner and Secretary of the New Jersey
Department of Civil Service, City of Newark, Hubert
Williams, in his official capacity as Director of the Newark
Police Dept., Olivia Howard and Lynette Crawford, Appellants.
 No. 79-2392.
 United States Court of Appeals,
Third Circuit.
 Argued July 10, 1980.
Decided Dec. 4, 1981.
Rehearing and Rehearing In Banc Denied Dec. 30, 1981.
 
 Frank Askin and Jonathan M. Hyman (argued), Rutgers Constitutional Litigation Clinic, Newark, N. J., and Jack Greenberg and O. Peter Sherwood, New York City, for appellants; Eric Neisser, New York City, of counsel.
 John J. Degnan, Atty. Gen. of New Jersey, Erminie L. Conley, Asst. Atty. Gen., Peter J. Calderone, Deputy Atty. Gen. (argued), Trenton, N. J., for State appellees.
 Before WEIS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Senior Circuit Judge.
 
 
 1
 Plaintiffs Olivia Howard and Lynette Crawford claimed, in a district court civil action filed in July 1977, that the hiring practices of the Newark police department discriminated on the basis of sex. They sought relief under two statutes, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1983 ("s 1983"). The district court denied their Title VII claim because plaintiffs had failed to file timely charges with the Equal Employment Opportunity Commission ("EEOC"). The § 1983 claim was dismissed for plaintiffs' lack of standing. We affirm the district court's conclusions on both the Title VII and § 1983 claims.
 
 FACTS
 
 2
 Plaintiffs Olivia Howard and Lynette Crawford applied for positions as police officers with the Newark police department. The application procedure involved is fully described in the opinion of Bronze Shields, Inc. v. New Jersey Civil Service, 667 F.2d 1074 (1981), and hence only a brief description will be given here. The initial step for all applicants is taking a written civil service examination. In January 1975, plaintiffs took the examination and failed. Because they failed, they were not permitted to take the physical agility or medical examination, the next step in the application process. Neither plaintiff was placed on the roster of those eligible to be hired as Newark police officers and neither has been hired.
 
 
 3
 Defendants in this case are the same as those in Bronze Shields, supra. Defendant New Jersey Civil Service Commission is responsible for administering the written, physical, and medical examinations given applicants for police officers throughout the State of New Jersey. Defendant City of Newark uses the results of these state examinations as a basis for hiring officers for Newark's police department.
 
 
 4
 In July 1976, plaintiffs and four black males filed employment discrimination charges against defendants with the EEOC. These six individuals alleged that defendants discriminated against black and Hispanic men and women on the basis of race and sex in hiring and promoting police officers in the Newark police department. After receiving right-to-sue letters from the EEOC, these six individuals jointly filed the complaint which is the subject matter of this appeal in the United States District Court for the District of New Jersey. This complaint alleged employment discrimination by defendants on the basis of both race and sex. At the same time, the six plaintiffs moved to amend the complaint in Bronze Shields, supra. The Bronze Shields case involved allegations of racial discrimination in the hiring and promotion of officers in the Newark police department. When the Bronze Shields complaint was filed, it did not state a cause of action grounded on Title VII but did state one grounded on § 1983. The district judge permitted plaintiffs to add their charges of racial discrimination to the Bronze Shields complaint but not their charge of sex discrimination. The parties then stipulated to the dismissal of the race discrimination charges from this case. The remaining two female plaintiffs were left only with their claims of sex discrimination, one based on Title VII, the other on § 1983. Plaintiffs appeal from the district court's dismissal of these claims.
 
 
 5
 Plaintiffs' contentions on appeal regarding the Title VII claim have been addressed at length in Bronze Shields, supra. For the reasons set out in that opinion, the district court's dismissal of the Title VII claim is affirmed. The only issue which must be addressed here is whether the district court properly dismissed the § 1983 cause of action for plaintiffs' lack of standing.
 
 STANDING TO SUE UNDER SECTION 1983
 
 6
 The facts relevant to the standing issue are not complicated. Plaintiffs took and failed the initial written civil service examination required of all police officer candidates. Because they failed, plaintiffs were not permitted to take the physical agility test administered in phase two of the application process and were not placed on the eligibility roster. Plaintiffs contend that the physical agility test, but not the written examination, discriminates on the basis of sex and therefore violates § 1983.
 
 
 7
 The Supreme Court has summarized the standing requirement in Duke Power Co. v. Carolina Env. Study Group, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978):
 
 
 8
 "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). As refined by subsequent reformulation, this requirement of a 'personal stake' has come to be understood to require not only a 'distinct and palpable injury,' to the plaintiff, Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct. Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). See also Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1925-26, 48 L.Ed.2d 450 (1976); Linda R. S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)."
 
 
 9
 To have standing, then, plaintiffs must demonstrate: (1) they suffered an injury; and (2) defendants' allegedly unlawful conduct caused their injuries.
 
 
 10
 (1) Injury
 
 
 11
 Plaintiffs suffered a distinct and palpable injury when defendants deprived them of employment. Defendants did not place plaintiffs on the eligibility roster. As a result, plaintiffs could not be considered for employment by the Newark police department for the next three years. Loss of a job opportunity is unquestionably a distinct and palpable injury. See Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Bronze Shields, Inc., supra; Bethel v. Jendoco Const. Corp., 570 F.2d 1168 (3d Cir. 1978). Plaintiffs, therefore, satisfy the first prong of the test for standing.
 
 
 12
 (2) Causal Connection Between Challenged Conduct and Injury
 
 
 13
 Plaintiffs do not satisfy the second prong of the standing test: there is no causal connection between the claimed injury (loss of job opportunity) and the challenged conduct (use of the physical agility test). Plaintiffs were refused employment because they failed the initial written examination, not because they failed the physical agility test. The required causal connection will be satisfied only if there is a substantial likelihood that the relief requested will redress the injury. Duke Power, supra at 74, 98 S.Ct. at 2631; Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 262, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). In the present case, plaintiffs requested the court to declare the physical agility test discriminatory and invalid. Such a declaration would render prior test results invalid and permit those women who failed the physical agility test to continue with the application process and perhaps be hired. Assuming the relief requested is granted, plaintiffs' injury will not be remedied. Plaintiffs will still not qualify for employment because they failed the written examination. Defendants' use of the challenged physical agility test did not cause plaintiffs' loss of job opportunity. Thus, plaintiffs do not have standing to challenge defendants' use of the physical agility test.
 
 
 14
 The failure of a plaintiff to satisfy the causal connection requirement of standing has resulted in dismissal in other cases. In Rothblum v. Board of Trustees of College of M. & D., 474 F.2d 891 (3d Cir. 1973), plaintiffs had applied for admission to medical school and been rejected. Plaintiffs claimed defendant unlawfully discriminated against them because they were non-residents of New Jersey. Defendant demonstrated that, although it indeed discriminated against non-resident applicants, plaintiffs had been denied admission because their grades were too low. The court held plaintiffs were without standing because the purportedly discriminatory admission "policy played no part in the rejection of their application for admission." Id. at 898. See also Doherty v. Rutgers School of Law-Newark, 651 F.2d 893 (3d Cir. 1981) (plaintiff, a rejected law school applicant who claimed school's Minority Student Admissions Program discriminated against him, held to have no standing because his rejection resulted from his academic deficiencies, not because he failed to qualify, or was otherwise disadvantaged, by the minority program); Coopersmith v. Roudebush, 517 F.2d 818, 823 (D.C.Cir.1975) (plaintiff, who claimed employer's hiring policy requiring recent work experience discriminated against women who abandoned employment to raise children, held to be without standing because she had worked recently and was denied the job for other reasons).
 
 
 15
 In an analogous case, East Texas Motor Freight v. Rodriquez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), several blacks and Mexican-Americans claimed their employer's no transfer policy and seniority system discriminatorily denied them the desirable job of line-driver. The plaintiffs, however, did not meet other, admittedly non-discriminatory, requirements for the line-driver job. (They had insufficient driving experience and too many prior accidents.) "Thus, they could have suffered no injury as a result of the allegedly discriminatory practices ...." Id. at 403-04, 97 S.Ct. at 1896-97. The cited cases support our conclusion that plaintiffs are without standing because they challenge conduct which did not harm them.
 
 
 16
 Plaintiffs attempt to circumvent the causation requirement by arguing they are threatened with a future harm. Threatened future harm can provide the basis for standing. Duke Power, supra (plaintiffs, alleging the harmful effects of nuclear power plants, had standing to challenge the construction of a nuclear power plant even though it was only under construction); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (plaintiff can seek to enjoin the enforcement of a state criminal statute if genuinely threatened with prosecution). Plaintiffs argue that, if the written examination they failed is invalidated in the Bronze Shields litigation, they will be threatened with having to take the physical agility test. Plaintiffs' argument no longer has force because the written examination was not invalidated in Bronze Shields. Furthermore, even had the written examination been invalidated, plaintiffs are unable to demonstrate that they would pass a valid, non-discriminatory written examination so as to be in a position to take the physical agility test or that they would fail the physical agility test. Plaintiffs have not suffered a sufficient threatened harm to meet the standing requirement as explained in Duke Power.
 
 
 17
 Plaintiffs contend that they have suffered a second type of threatened harm which gives them standing to challenge the physical agility test. Threatened injury can constitute injury-in-fact where the threat is so great that it discourages the threatened party from even attempting to exercise his or her rights. In International Brotherhood of Teamsters v. United States, 431 U.S. 324, 365-66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Court said:
 
 
 18
 "If any employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices-by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."
 
 
 19
 In the present case, however, the alleged threat of discrimination posed by the physical agility test did not discourage plaintiffs from applying for the job. Plaintiffs did apply, failed the initial written examination, and were denied employment. Thus, plaintiffs cannot rely on this "threat" to satisfy the standing requirement.
 
 
 20
 We conclude that plaintiffs have suffered no injury caused by the conduct they challenged as discriminatory. Plaintiffs are therefore without standing to challenge defendants' use of the physical agility test under § 1983.
 
 CONCLUSION
 
 21
 The district court's dismissal of both the Title VII and § 1983 claims of sex discrimination was proper and will be affirmed.
 
 
 22
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.
 
 
 23
 This Title VII and 42 U.S.C. § 1983 case presents a challenge to the hiring practices of the Newark police department which is related to the issues we faced in the companion case of Bronze Shields, Inc. v. New Jersey Department of Civil Service, 667 F.2d 1074, (3d Cir. 1981). In the present action, plaintiffs Olivia Howard and Lynette Crawford claim that the Police Officer Physical Performance Test (POPPT) administered to candidates who successfully pass the written civil service examination discriminates against female candidates. Neither Howard nor Crawford passed the written examinations and, therefore, they were not permitted to take the physical agility test. Because I disagree with the majority's conclusion in Bronze Shields, I dissent from their holding that the plaintiffs are without standing to challenge the physical agility test.
 
 I.
 
 24
 Olivia Howard and Lynette Crawford are black female applicants for the entry level position of police officer in Newark. In July 1976, the plaintiffs filed charges with the Equal Employment Opportunity Commission (EEOC) alleging both race and sex discrimination. When they filed charges with the EEOC, Howard and Crawford were plaintiffs in Bronze Shields and agreed by stipulation to have their race claims considered exclusively in the context of the Bronze Shields litigation. Thus, this action is limited to a claim of sexual bias with respect to the physical performance portion of the hiring process. Plaintiffs do not contend that the written examination was in any way tainted by sexual bias.
 
 
 25
 In its Stipulated Order of Dismissal in Part, the district court permitted the race claims and the plaintiffs' class certification issue to be considered in the context of the Bronze Shields litigation. On February 23, 1979, the district court refused to certify a class in Bronze Shields on the ground that the plaintiffs, including Howard and Crawford, did not have valid Title VII claims because their EEOC charges were not filed on time. In an August 22, 1979 Order in the present case, the district court dismissed the plaintiffs' suit because "plaintiffs' Title VII claims are barred by plaintiffs' failure to file timely E.E.O.C. charges.... There is no evidence of intentional discrimination against women with respect to the written open competitive examination ... (and) since plaintiffs (have) failed to pass the written examination, and therefore (are not) eligible to take and (have) not taken the physical performance test, they lack standing to challenge the physical performance test ...." App. at A129.
 
 II.
 
 26
 The lower court's decision on standing is correct as to the Title VII claims only if the EEOC charges were in fact filed out of time. I have dissented to the majority's decision in Bronze Shields affirming the district court's opinion as to the untimeliness of the Title VII filing. Because I believe that the EEOC charges were timely filed in Bronze Shields, I have concluded that Howard and Crawford were improperly denied class representative status and that they do have standing to challenge the physical performance test. Furthermore, since they have alleged that the POPPT was intended to discriminate against women, I have concluded that class certification was improperly denied under § 1983.
 
 
 27
 The standing requirement under article III of the United States Constitution is satisfied when plaintiffs have alleged a personal stake in the outcome of the controversy, injury in fact, and a causal connection between the actions of the defendants and the injury of the plaintiffs. Duke Power Co. v. Carolina Env. Study Group, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). There is little question that the Howard plaintiffs have a personal stake in the controversy and would present the court with "concrete adverseness." 369 U.S. at 204, 82 S.Ct. at 703. Likewise, there is no disagreement over whether the plaintiffs have suffered an injury in fact. The majority finds that the plaintiffs "suffered a distinct and palpable injury when defendants deprived them of employment." At 1101. Yet, the majority concludes that the plaintiffs lack standing to remedy their injury "because they failed the initial written examination, not because they failed the physical agility test." Id.
 
 
 28
 I write only to note that it is the majority's opinion in Bronze Shields which deprives the plaintiffs of Title VII standing in this case. If the EEOC filings had been held to be timely, then Newark could not shield from scrutiny an allegedly discriminatory second step in the hiring process by an initial act of discrimination. As to the § 1983 claim, the plaintiffs do have standing to represent the class of women applicants who have passed the written exam but failed the POPPT even though they have not passed the first hurdle themselves. Falcon v. General Telephone Co., 626 F.2d 369 (5th Cir. 1980). I therefore dissent from the majority's affirmance of the district court's refusal to certify a class under § 1983 consisting of all women who passed the written exam but failed the POPPT.