680 F.2d 955
 29 Fair Empl.Prac.Cas. 65, 29 Empl. Prac.
Dec. P 32,843
HOOD, George Jr., on behalf of himself and a class of others
similarly situated, Appellant in No. 80-2179,
v.
NEW JERSEY DEPARTMENT OF CIVIL SERVICE, New Jersey Civil
Service Commission, and City of Newark.
and
VULCAN PIONEERS, INC., William Thomas, Joseph Head, Charles
Lige, Ernest Smith, Benjamin Josephs, Ronald
Heath, Appellants in No. 80-2609,
v.
The NEW JERSEY DEPARTMENT OF CIVIL SERVICE, Ralph P. Shaw,
Chief Examiner of the Department of Civil Service, The New
Jersey Civil Service Commission, S. Howard Woodson,
President of the Civil Service Commission, Thomas DeLuca,
John Holden, Matthias Rodriguez and Charles Walther,
Commissioners of the Civil Service Commission, the City of
Newark, New Jersey, a municipal corporation, John P.
Caulfield, Director of the Newark Fire Department.
 Nos. 80-2179, 80-2609.
 United States Court of Appeals,
Third Circuit.
 Argued March 24, 1981.
Decided June 10, 1982.
 
 Jonathan M. Hyman (Argued), Elizabeth M. Schneider, Newark, N. J., O. Peter Sherwood, Jack Greenberg, New York City, for appellants.
 William Harla (Argued), Erminie L. Conley, John J. Degnan, Peter J. Calderone, Newark, N. J., Matthew J. Scola, West Orange, N. J., for appellees.
 Before HUNTER, SLOVITER and WISDOM,* Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 These two appeals involve allegations of racial discrimination in the hiring and promotion of firefighters in Newark, New Jersey.[1] Plaintiffs assert that defendants have violated 42 U.S.C. § 1981 (1976) and 42 U.S.C. § 2000e et seq. (1978) ("Title VII") by promulgating and using a Civil Service examination which resulted in a disproportionate number of black and Hispanic applicants being excluded from positions in the fire department. The district court dismissed the Title VII claims because plaintiffs had failed to file charges with the Equal Employment Opportunity Commission ("EEOC") within the statutorily-prescribed period. Summary judgment was entered for defendants on the remaining claims because plaintiffs had not alleged the presence of discriminatory intent. We have held these appeals under advisement, pending our decisions in Croker v. The Boeing Co., 662 F.2d 975 (3d Cir. 1981) and Bronze Shields, Inc. v. New Jersey Department of Civil Service, 667 F.2d 1074 (3d Cir. 1981). In light of these recent decisions,[2] we will affirm the conclusions of the district court.
 
 FACTS
 
 2
 The City of Newark uses the New Jersey Civil Service examination to determine initial eligibility for hiring and promotions in the fire department. The Civil Service examinations at issue are administered on a statewide basis; they are not limited to Newark residents. Between 1972 and 1976, the City of Newark hired and promoted firemen on the basis of these test results; those who scored highest were hired (or promoted) first. New Jersey municipalities were prohibited by law from granting any preference to municipal residents in firefighter appointments.
 
 
 3
 The names of those individuals who successfully completed the examination and met minimum qualifications were placed by the Civil Service on an eligibility list with placement determined by test results. This roster was subject to established veterans' preference requirements.[3] Once a particular roster had been promulgated, each applicant was notified as to whether he or she had passed the examination as well as the position he or she held on the roster.
 
 PROCEDURAL HISTORY
 Vulcan Pioneers (Heath)
 
 4
 In 1973, a complaint was filed in federal court by Vulcan Pioneers, Inc., alleging discrimination against blacks and Hispanics in the hiring and promotion of firefighters in Newark, New Jersey, in violation of 42 U.S.C. §§ 1981, 1983 (1976), and the thirteenth and fourteenth amendments. Two sub-classes were certified: blacks and Hispanics who were not hired because of discriminatory practices, and blacks and Hispanics not promoted because of discriminatory practices.
 
 
 5
 Ronald Heath, a black firefighter with the City of Newark since 1963, had competed in a promotional test for which an eligibility list was compiled on July 4, 1972, with an expiration date of July 3, 1975. Heath failed the examination. The last appointments made from the list were on June 30, 1975.
 
 
 6
 On July 27, 1976, Heath filed a complaint with the EEOC. He asserted that the New Jersey Department of Civil Service and the State Civil Service Commission administered hiring and promotional examinations for Newark firefighter positions which discriminated against blacks and Hispanics. He received a right-to-sue letter in April 1977, and the original complaint filed by Vulcan Pioneers was subsequently amended on January 6, 1978 to add a second count based on the Title VII charge filed by Heath.
 
 
 7
 On February 23, 1979, the district court, in an unpublished opinion, dismissed the Title VII claim on the ground that Heath's 1976 EEOC charge was not filed within the statutorily-designated period of 180 days.[4] The district court found that the charge of discrimination stemmed from the composition of the list and that an EEOC charge, to be timely, should have been filed within 180 days of the promulgation of the list on July 4, 1972. The district court held that the continued existence of the list did not toll the 180-day statutory period until the expiration of the list on July 3, 1975. Plaintiffs' cross-motion for certification of a Title VII class was denied as moot. Vulcan Pioneers v. New Jersey Department of Civil Service, No. 950-73 (D.N.J., filed Feb. 23, 1979). Appendix at 43. The court granted summary judgment for defendants on the §§ 1981 and 1983 and the thirteenth and fourteenth amendment claims on April 8, 1980, and plaintiffs appealed.[5]
 
 Hood
 
 8
 On May 18, 1978, George Hood filed an EEOC charge against the Department of Civil Service and the State Civil Service Commission alleging discrimination against blacks and Hispanics in the hiring of firefighters to entry level positions. He received a right-to-sue letter and subsequently filed a complaint on April 15, 1980, asserting his Title VII charge.[6]
 
 
 9
 Upon motion of defendants, Hood's complaint was dismissed. The district court found the underlying EEOC complaint to have been untimely filed because Hood's complaint fell well outside of the 180-day time limit prescribed by the statute. Hood's name appeared on the hiring list which was used between October 4, 1973 and October 3, 1976, with the last appointment from the list being made on December 2, 1974. Hood appealed.
 
 
 10
 On December 17, 1980, we consolidated the appeals in Vulcan Pioneers and Hood because of the identity of factual and legal issues involved.
 
 DISCUSSION
 
 11
 These appeals raise two issues: 1) whether the Title VII claims filed by Health and Hood were timely; and 2) whether Vulcan Pioneers' claim, based upon 42 U.S.C. § 1981, requires a showing that there has been an intent to discriminate.
 
 The Title VII Claims[7]
 
 12
 The district court ruled that the EEOC complaint by Heath should have been filed within 180 days of the promulgation of the July 4, 1972 list, since that promulgation was the unlawful practice upon which the complaint rested.[8] No "continuing violation" existed by virtue of the continued use of the list since no specific instance of discrimination occurred after the promulgation of the list. Vulcan Pioneers, appendix at 55.
 
 
 13
 In its opinion, the district court also rendered a decision on a Title VII class certification motion in the related case of Bronze Shields, Inc. v. New Jersey Department of Civil Service, No. 2022-72 (D.N.J., filed Feb. 23, 1979). This decision, along with a subsequent decision rendered by the district court in Bronze Shields,[9] was reviewed by us in Bronze Shields, Inc. v. New Jersey Department of Civil Service, 667 F.2d 1074 (3d Cir. 1981). In Bronze Shields, the named plaintiffs failed the Civil Service examination used by the City of Newark to determine eligibility for hiring police officers. Plaintiffs filed EEOC charges prior to the expiration of the hiring list but more than 180 days after its promulgation. The list was used only once, sixteen months after the filing of the EEOC complaint. In holding that the Title VII claim was properly dismissed we stated:
 
 
 14
 (W)e must likewise identify precisely the unemployment practice of which plaintiffs complain and separate it from the inevitable, but neutral, consequences of the allegedly discriminatory practice. Plaintiffs complain of defendants' refusal to place them on the hiring roster. Accepting plaintiffs' allegations as true, the roster, because it arises from examinations which have a discriminatory impact, could constitute an unlawful employment practice. Plaintiffs received formal notice that they were not on the eligibility roster on May 3, 1975, the date of its formal promulgation. As of that date at the latest, plaintiffs knew they would not be hired by the Newark police department for the next three years because they were not on the eligibility roster. Plaintiffs, however, did not file within 180 days of May 3, 1975.
 
 
 15
 Plaintiffs argue that Newark continued to discriminate against them by its use of the eligibility roster. This argument is unpersuasive. First, Newark never used the list prior to plaintiffs' filing charges with the EEOC. Second, even if Newark had used the list, plaintiffs do not allege that Newark would have followed anything but a neutral, non-discriminatory procedure in hiring from the list. Newark's policy was simply to hire in order from the list.
 
 
 16
 667 F.2d at 1083.
 
 
 17
 That analysis is applicable here. With regard to the EEOC complaint by Heath in Vulcan Pioneers, formal notice of ineligibility for promotion was given by July 4, 1972, the date of the list's promulgation. At that time, Heath knew that he would not be promoted during the next three years. He did not, however, file his complaint within 180 days of July 4, 1972. His claim is therefore barred.
 
 
 18
 The EEOC complaint by Hood differs from those discussed above since Hood passed the Civil Service examination, and he was placed on the eligibility list for hiring. It is, however, unnecessary for us to discuss whether in this context the use of the list or even its existence represents a "continuing violation" against which a complaint may be filed. Hood's complaint was not filed for almost three and one-half years after the last use of the list. Over one and one-half years had passed since the expiration of the list. Regardless of which date is used, the requirement that the complaint be filed within 180 days of the violation was clearly not met.
 
 
 19
 To avoid this result, Hood asserts that the filing of the EEOC complaint by Heath tolled the filing period for his own charge, because the filing of a class-action claim tolls the running of the statute of limitations for the putative class members. See, e.g., American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1973). However, in order for the statute to be tolled, the original complaint must have been timely filed.[10] As was noted above, Heath's 1976 Title VII claim was not timely. Hood cannot resurrect that claim to his benefit, and, therefore, Hood's complaint was properly dismissed as filed out of time.
 
 Vulcan Pioneers' 42 U.S.C. § 1981 claim
 
 20
 Vulcan Pioneers appeals the district court's holding that intentional discrimination is a necessary element of a § 1981 claim. Plaintiffs adduced no evidence to show intentional discrimination by any of the defendants, and, for that reason, summary judgment was entered against them. For the reasons we stated in Croker v. The Boeing Co., 662 F.2d 975 (3d Cir. 1981), and in Bronze Shields, we agree with the district court. In Croker and Bronze Shields we held that intentional discrimination is a required element of a § 1981 claim. The district court in this case found no evidence of intentional or purposeful discrimination; our examination of the record confirms that finding.
 
 CONCLUSION
 
 21
 For the foregoing reasons, the district court's grant of summary judgment on the § 1981 claim and its dismissal of the Title VII claims will be affirmed.
 
 
 22
 SLOVITER, Circuit Judge, dissenting.
 
 
 23
 I would remand to the district court on both the Title VII and § 1981 claims.
 
 
 24
 I recognize that we are bound by the holding in Bronze Shields, Inc. v. New Jersey Department of Civil Service, 667 F.2d 1074 (3d Cir. 1981), that the 180-day period in which to file a charge with the EEOC runs from the date of the eligibility list's promulgation with respect to applicants who failed the examination and who were never placed on the list. My own view is that Judge Higginbotham's dissent sets forth the more persuasive analysis relying on the continuing violation, but we are not free to overrule a published opinion of a previous panel. See Internal Operating Procedures, United States Court of Appeals for the Third Circuit, Ch. VIII, C. (1980). However, in this case, the Title VII claim differs in some material respects from that before the court in Bronze Shields. Here the plaintiff Heath was already a firefighter who sought to attack not only the pattern of promotions in the fire department but the pattern of hirings as well. As a current employee, there would have been no reason for Heath to have taken the examination of May 30, 1973, from which the list controlling hirings was apparently taken. Heath's ability to challenge discriminatory hiring practices may be sustained under the theory that a current employee has standing under Title VII to attack discriminatory hiring practices, even though the complaining employee has not been denied employment. See, e.g., EEOC v. Mississippi College, 626 F.2d 477, 482-83 (5th Cir. 1980), cert. denied, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981); Waters v. Heublein, Inc., 547 F.2d 466, 469-70 (9th Cir. 1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977); Gray v. Greyhound Lines, East, 545 F.2d 169 (D.C.Cir.1976). Cf. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (current tenants have standing under Title VIII to attack exclusion of non-white apartment applicants on grounds of interest in "interracial associations"). See also 4 Newberg on Class Actions § 7973c (1977). In an affidavit on record, Heath alleged that his work environment has been adversely affected by the absence of more black and hispanic employees in the fire department. Appendix of Appellant Vulcan Pioneers at A148-51. The district court failed to consider whether these allegations demonstrate sufficient injury to confer standing upon Heath to complain of the hiring practices. Since Heath's action was dismissed for failure to file a timely charge and there was no finding that he had not adequately shown standing, I believe that on appeal we must assume that Heath can properly challenge both hiring and promotion practices.[1]
 
 
 25
 Heath filed his EEOC charge on July 27, 1976, concededly more than 180 days after the promulgation of the hiring list on October 4, 1973. However, this list did not expire until October 3, 1976. Since the plaintiff in this case, in contrast to those in Bronze Shields, is an employee who claims continued injury because of discriminatory hiring practices, I would hold that the violation continues so long as the list remains in effect, and that the period for timely filing of a charge with the EEOC would extend from the promulgation of the list to 180 days after its expiration. As so construed, Heath's charge was filed within the requisite 180 days.
 
 
 26
 Moreover, in Bronze Shields we relied on the fact that there had been no appointments from the list within 180 days before the filing of the charge and suggested that the result might be different if that were not the case. 667 F.2d at 1083 & n.23. In contrast, it appears in this case that several firefighters were hired on March 10, 1976. If those hirings were made using the hiring eligibility list, a question which is not clear from the record, then the Heath complaint was timely filed not only if measured from the expiration of the list but also if measured from the most recent use of the list.
 
 
 27
 The majority seems to concede that the Heath complaint, if timely filed, would toll the limitations period with respect to the Hood complaint. Cf. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) ("commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"). Unlike the plaintiffs in Bronze Shields who had failed the examination, HOod passed it but alleges that as a result of the discriminatory practices, his low placement on the eligibility list resulted in the failure to hire him. Appendix of Appellant Hood at A3-4. Hood could not have been expected to know that his name would not be reached until the list expired. Since the date when Heath filed his charge with the EEOC, July 27, 1976, inured to Hood's benefit, and as noted above, I would hold Heath's charge was timely, I would also hold that Hood is not precluded from having his Title VII action heard.
 
 
 28
 Turning next to the § 1981 claim, I continue to believe that proof of discriminatory impact should be sufficient to establish a claim under § 1981, for the reasons set forth in Judge Gibbons' dissent in Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981) (en banc), which I joined, and in Judge Higginbotham's dissent in Bronze Shields. I recognize, however, that we are compelled to follow the precedent of those cases. In view of the fact that the Supreme Court has agreed to review a case presenting this very issue, Guardians Association v. Civil Service Commission, 633 F.2d 232 (2d Cir. 1980), cert. granted, --- U.S. ----, ----, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982), I would have preferred to defer decision of this case pending the Supreme Court's ruling on this subject.
 
 
 29
 However, even under the construction of § 1981 accepted by the majority in Croker v. Boeing, I believe the entry of summary judgment was inappropriate. The Croker majority recognized that "disproportionate impact may be an important factor in proving racially discriminatory intent. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977)." 662 F.2d at 989. In this case plaintiffs have alleged a disproportionate impact of such magnitude as to create an inference of discriminatory intent. As alleged by plaintiffs, the population of Newark according to the 1970 census was 54% black, 12% hispanic. Appendix of Appellant Vulcan Pioneers at A89. In 1973, blacks comprised only 4.5% of the Newark Fire Department, the lowest percentage of minority employees of any major Newark agency. In contrast, the percentage of black employees in other Newark agencies was 43.4%; the agency with the largest percentage of blacks was the department of rat and pest control, 86.2% of whose employees were black. Id. at A90.
 
 
 30
 The 1973 statewide civil service hiring examination had a pass rate of 65.1% for white male applicants, 18.3% for black male applicants, and 18.5% for hispanic male applicants. Id. at A100. Between 1973 and 1976, 112 appointments were made to the fire department from the list, of whom only 4 were blacks, and 1 hispanic. Id. at A85. In 1976, blacks and hispanics still only comprised 5% of the fire department. Id. at A95. While defendants may be able to rebut the inference of discriminatory intent which those statistics create, I believe that on this record a triable issue of intent was raised.
 
 
 31
 I would therefore remand to the district court for resolution of the factual issues, if any, presented with respect to Heath's standing to challenge the hiring practices of the fire department, the propriety of class certification on the Title VII claim, and the adequacy of the plaintiffs' evidence to establish discriminatory intent under § 1981.
 
 
 
 *
 Honorable John M. Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The named plaintiffs claim to be victims of such racial discrimination. Each of the defendants is involved in some fashion with the hiring or promotion process
 
 
 [2]
 See also Howard v. New Jersey Department of Civil Service, 667 F.2d 1099 (3d Cir. 1981)
 
 
 [3]
 See N.J.Stat.Ann. § 11:27-5 (West Supp.1981)
 
 
 [4]
 See 42 U.S.C. § 2000e-5(e) (1978)
 
 
 [5]
 Plaintiffs have raised only the § 1981 and Title VII claims in this appeal
 On January 15, 1979, the United States had filed a complaint against the New Jersey Department of Civil Service and twelve municipalities (including Newark) alleging racial discrimination in the hiring and promotion of firefighters in violation of Title VII and the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. §§ 1221-1264 (1976). United States v. New Jersey, Nos. 77-2054 & 79-184 (D.N.J., complaint filed Jan. 15, 1979). That case had been consolidated with Vulcan Pioneers. After the entry of summary judgment in Vulcan Pioneers, a consent decree was entered into by the parties to the United States suit. As to Newark, the method of testing applicants was altered in order to achieve a hiring goal of sixty percent minority members. The consent decree made only limited provision for relief to individuals who claimed wrongful past exclusion. Appendix at 65.
 
 
 [6]
 Hood had attempted unsuccessfully to intervene in the Vulcan Pioneers litigation
 
 
 [7]
 The relevant dates for the Title VII claims asserted here are as follows:
 The district court, in Vulcan Pioneers, notes without discussion that Newark hired several firefighters on March 10, 1976 and September 6, 1976. It is unclear whether the list which expired on November 3, 1976, was used in making these appointments. Because we have concluded infra that, under our decision in Bronze Shields, the 180-day period began to run when Heath learned he had failed the promotional examination (i.e., July 4, 1972, the date the list was promulgated), we need not determine whether the hiring list was used in making the 1976 appointments.
 
 
 [8]
 The dissent urges that we remand this case for a determination of whether Heath's "work-environment" claim is meritorious. It appears from the record that Heath did not present his work-environment claim to the EEOC; nor is this claim evidenced in the language of Heath's EEOC complaint, even when liberally construed. Heath's complaint challenged only the administration of the hiring and promotional examinations. The alleged injury to his work environment by virtue of the absence of black and Hispanic employees in the fire department was not raised until some three years later. Therefore, we cannot reach this issue here. Cf. King v. Seaboard Coast Line RR, 538 F.2d 581, 583 (4th Cir. 1976) (The EEOC charge, enlarged only by reasonable investigation proceeding therefrom, fixes the scope of the charging party's subsequent right to institute a civil suit); Macon v. Bailar, 451 F.Supp. 140, 141 (E.D.Va.1978) (same)
 
 
 [9]
 Bronze Shields, Inc. v. New Jersey Department of Civil Service, No. 72-2022 (D.N.J., filed April 29, 1980)
 
 
 [10]
 American Pipe, 414 U.S. at 561, 94 S.Ct. at 770 (allowed one year for filing, the nominal plaintiff filed with eleven days to spare; when the class decertified, the period began to run again, and decertified members of that class had eleven days to file); Haas v. Pittsburgh Nat'l. Bank, 526 F.2d 1083, 1097 (3d Cir. 1975) "the timely commencement of a class action tolls the applicable statute of limitations, even though the suit is later denied class action status after the statutory period has elapsed") (emphasis added); Barrett v. United States Civil Service Comm'n., 439 F.Supp. 216 (D.D.C.1977) (after class decertified, former class members had to file
 
 
 [1]
 The majority suggests that we are precluded from considering what it denominates as Heath's " 'work environment' claim" on the ground that it was not raised until well after the original EEOC charge. At 958 n.8. However, Heath's allegation that is work environment has been adversely affected by the absence of more minority employees does not constitute a separate claim of discrimination. It is conceded that Heath's EEOC charge challenged both the pattern of hirings and promotions in the fire department, which were the discriminatory practices alleged. The "work environment claim", on the other hand, has relevance to Heath's standing to assert his claim of discrimination in hirings
 As the court stated in Macon v. Bailar, 451 F.Supp. 140, 142 (E.D.Va.1978), cited by the majority at 958 n.8, the requirement that a charge of discrimination first be filed with the EEOC serves to give the employer "notice of the fault" and "the opportunity to correct its fault out of court." In this case, Heath's EEOC charge alleged:
 The (defendants) discriminate against Black and Hispanic people on the basis of race in hiring, promotion and other terms, condition and privileges of employment. This pattern and practice of discrimination includes the following: The New Jersey Department of Civil Service and the New Jersey Civil Service Commission have administered hiring and promotional examinations for firefighter positions which discriminate against Blacks and Hispanics. The City of Newark has administered a background investigation for applicants for employment for firefighters which discriminates against Blacks and Hispanics. The present seniority system perpetuates these discriminatory practices. The charging party brings this charge on behalf of all Black and Hispanic persons similarly situated.
 Appendix of Appellant Vulcan Pioneers at A44. This charge gave defendants ample notice that Heath was challenging both the pattern of hirings and promotions. Unlike the cases cited by the majority, therefore, this is not a case where an employee files a charge with the EEOC alleging one type of discrimination and then files suit alleging another type of discrimination.